534

National Mutual Church Insurance Company, Appellant, v. Henry P. Magill, Appellee and Cross Appellant.

Gen. No. 41,124.

Opinion filed October 1, 1940.  Rehearing denied October 15, 1940.

CHARLES O. LOUCKS, of Chicago, for appellant; WAL-
TER J. Cox, of Kenilworth, of counsel.

SAMUEL A. HARPER and WALTER SCZUDLO, both of
Chicago, for appellee; THOMAS E. D. BRADLEY and
THOMAS S. STEARNS, both of Chicago, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the
court.

Plaintiff filed an affidavit in attachment alleging that
defendant owed plaintiff $5,926.13, representing losses
and damages sustained by plaintiff because of its as-
sumption by contract of certain liabilities of the Mutual
Insurance Corporation of Chicago, Illinois, which losses
and damages defendant in and by his written bond, in
the sum of $15,000, agreed to pay, and which upon re-
quest he has failed to do; that defendant is not a resident
of this State but resides in Danville, Kentucky. The
attachment was levied on real estate in Cook county,
Illinois, owned by defendant in joint tenancy with his
wife.

Defendant filed an answer and counterclaim denying
he was indebted to plaintiff in any sum whatsoever;
asserting that in addition to the indemnifying bond,
defendant gave to plaintiff $7,000 in cash and also de-
fendant's promissory note for $5,000 secured by mort-
gage to secure plaintiff for any losses or damages in-
curred by it by reason of its contract with the Mutual
Insurance Corporation; that plaintiff has not suffered
any losses or damages under this contract and defend-
ant is therefore entitled to the return of the $7,000 in
cash and the promissory note for $5,000. Defendant
also claims $250 as salary due him.

Motions to strike the affidavit in attachment and also
the counterclaim were denied and the cause was heard
by the court, which found for defendant under the issues
raised by the complaint; the $5,000 promissory note
secured by the mortgage was ordered to be returned to

defendant, but the finding was against defendant as to the counterclaim for the return of $7,000 and also the claim for $250.

Plaintiff has appealed from the finding against it on its complaint and defendant appeals from the finding against him as to the return of the $7,000 and the $250 item of salary.

The National Mutual Church Insurance Company, plaintiff, and the Mutual Insurance Corporation were engaged in general insurance business, issuing policies covering fire, windstorm, automobile and like insurance. Defendant, Mr. Magill, was president of each of these companies. Prior to March 4, 1933, the Mutual Insurance Company desired to dispose of its business and to reinsure the policies it had written. Plaintiff agreed to assume the entire business of the Mutual Company, which agreed to transfer all of its assets in consideration of the National Company assuming all its liabilities and reinsuring all its policies.

Defendant agreed to give plaintiff his bond in the sum of $15,000 ''to indemnify the obligee against any loss or damage'' resulting from the assumption and liquidation of the business of the Mutual Company.

At this time the Mutual Company had a large number of outstanding policies, some of which were written for a term of five years; premiums on many of these were collected annually, and in some instances for the full five years in advance. The financial statement of the Mutual Company furnished to plaintiff at this time apparently showed that the liabilities exceeded the assets, due to the large reserve set up for the ''unearned premiums,'' which amounted to $23,569.83.

March 4, 1933, plaintiff and the Mutual Company executed a contract whereby the Mutual Company conveyed to the National Company all its policies or contracts covering insurance of different kinds and in force on February 28, 1933. On the same day defendant, Magill, executed the indemnifying bond above referred

to. At the same time another contract was signed by the insurance companies and defendant, which recites that Magill is a creditor of the Mutual Company for something over $41,000, and also in the sum of $7,000 which is advanced by Magill to the National Company "to apply against deficit in reserves"; that Magill agrees to subordinate his claims and waive payment of them, "except out of any surplus or excess remaining after liquidation of assets transferred in pursuance of said contract"; that Magill also should deliver to the National Company his note for $5,000 secured by a mortgage on premises in California "as security and guaranty against any loss or damage which said National Mutual Church Insurance Company, of Chicago, Illinois, may sustain or suffer because of the assuming" by it of the policies and obligations of the Mutual Company of Chicago. There was also provision that if the note and mortgage were no longer required as security for loss they should be returned to Magill. The amount of $7,000 in cash and the promissory note for $5,000 secured by mortgage were given by defendant to plaintiff. Accounts were opened by plaintiff corporation on its books with reference to the assets and liabilities of the Mutual Company. January 19, 1934, a decree was entered in the circuit court of Cook county dissolving the Mutual Insurance Corporation. The accounts kept by plaintiff of the "unearned premiums" showed these to be $23,569.83 on February 28, 1933, but in less than one year's time, that is, December 31, 1933, these contingent liabilities had been reduced to $4,257.35. The accounts also show that all of the policies of the Mutual Company taken over by plaintiff on February 28, 1933 had been "run off," (as the witnesses term it) that is, the liability assumed under them terminated on or before March 28, 1938.

June 22, 1938, defendant made a demand on plaintiff for the return of the security pledged by him pursuant to the contract, namely the sum of $5,000, the amount

of the promissory note, and the $7,000 in cash, plus $250 withheld as salary due him. Two days after this demand was made plaintiff sued out a writ of attachment against defendant and levied on his property in Oak Park, Illinois.

The question presented is, Did the defendant, by his indemnifying bond and his advances to plaintiff, assume any obligations with reference to the unearned premium reserves except a contingent liability, and if such premiums have become fully earned and no part has been paid back because of a canceled policy and no losses covered by any policy have been paid, has not defendant's obligation under his bond been satisfied and is he not entitled to the return of the advances made by him?

At the trial no evidence was introduced of any ultimate loss sustained by plaintiff in connection with its acquisition of the business of the Mutual Insurance Company.

It can hardly be controverted that in order to recover from defendant under his indemnifying bond it was necessary for plaintiff to show some loss or damage arising from its assumption of the policies, liabilities and obligations of the Mutual Insurance Company. The condition of the bond is that if the obligor "shall indemnify the obligee against any loss or damage which (it) . . . may sustain or suffer because of the assuming by said obligee of the policies," etc., of the Mutual Insurance Company, the obligation shall be void otherwise to remain in full force and effect.

Moreover, defendant could hardly be expected to give an indemnifying bond to pay plaintiff all the liabilities then appearing upon the books of the Mutual Insurance Company without any chance of recovering back any of his advances. Why should he give plaintiff a bond and advance $7,000 in cash and his $5,000 promissory note unless he expected that these unearned premiums

which appeared as a liability at the time would in the course of time terminate and cease to be a liability.

There are many items appearing in the documents signed and in the testimony which indicate Magill expected that by the time the policies had expired there would be no liabilities that he would be called upon to make good under his indemnifying bond. In the contract for the surety bond dated March 4, 1933, it is recited that Magill is an officer of the Mutual Insurance Company and in consideration of the National Insurance Company "accepting the risk of said contract of reinsurance," Magill agrees to indemnify the National Company against all loss or damage because of the assumption by it of this risk. The contracts repeatedly refer to the advances made by defendant to plaintiff and the execution of the indemnifying bond as a guaranty against any loss or damage which the National Company might sustain. These words can only refer to some ultimate situation which would be developed in due course of time. They could hardly refer to the instant showing of the liabilities on the books as of February 28, 1933.

Although there was some evidence to the contrary, there was testimony that in the conversations leading up to the execution of the contracts nothing was mentioned with reference to any guaranty of payment of the contingent liability designated as "unearned premiums." The trial court could properly accept the statement of the witnesses that in what was said concerning defendant's agreement to guarantee payment of any losses, the parties were referring to "ultimate losses," and there were no ultimate losses.

Whether the term "unearned premiums" means legal liabilities, has been the subject of litigation. The most apt statement which is presented in the briefs is a quotation from the work of Professor Huebner on Property Insurance, p. 217, where, in speaking of un-

earned premiums, the author says: "It may be defined as that portion of the premium which the company has not yet had time to earn." Other writers upon the subject are in accord. Two authors—Riegel and Lomas, in their text book on Insurance Principles and Practices say the only reason for the existence of an unearned premium reserve is first to pay back the unearned premium under a policy that may be canceled, and second, to pay out of such reserve any claim for losses covered by the policy. And as was very properly said in *Aetna Ins. Co. v. Hyde,* 315 Mo. 113, 133, unearned premium is but an arbitrary measure of contingent liability. To the same effect is *Central-Penn Nat. Bank v. New Jersey Fidelity & Plate Glass Ins. Co.,* 117 N. J. Eq. 548. See also 65 C. J. 1223. And in *Townsend v. Equitable Life Assur. Society,* 263 Ill. 432, it was held that money paid as premiums was not a trust fund but the policyholder is a creditor entitled to payment in accordance with his contract with the corporation. In *Munich Re-Insurance Co. v. United Surety Co.,* 121 Md. 479, the court had among other things to determine the character of unearned premiums. It was held that at the end of the term for which the premiums are received the reserve is released and becomes available as current income; that the premium reserve should not be used as a factor in determining the actual profit or loss because such a reserve does not represent a liability.

Other points are made by both parties but we have discussed only the vital and decisive point in the case. It seems clear, both on reason, upon the evidence and upon precedent, that the item of unearned premiums as it stood in February, 1933, should not have been counted in determining the obligations of plaintiff and defendant in March, 1938.

The statement of account introduced by plaintiff included the item of $23,569.83 as a liability on February 28, 1933. Deducting this from the total amount of liabilities leaves $12,769.26, as the total of debts. De-

ducting this from the total credits of $30,162.96 leaves a surplus of $17,393.70. Out of this defendant was entitled to the return of the $7,000 advanced by him. He was also entitled to the payment of $250 with which plaintiff has credited defendant as a salary allowance.

The trial court properly found against plaintiff upon the attachment issue, holding there was no proof that defendant was not a resident of Illinois. The evidence showed that defendant had three places of residence— one in Oak Park, Illinois, a second in Danville, Kentucky, and a third in South Pasadena, California; that during the two years preceding the trial he spent less than six months of this period in Danville, Kentucky, went to California the latter part of each winter, and that he was in Illinois the majority of the time. There was no evidence that he intended to establish a permanent residence out of Illinois. To sustain the writ of attachment, plaintiff had the burden of proving that defendant was not a resident of Illinois. *Weber Chimney Co. v. Johnson,* 205 Ill. App. 348; *Barron v. Burke,* 82 Ill. App. 116.

Moreover, where the court finds for the defendant on the merits the attachment must fall. The fact that defendant failed to deny the allegations in plaintiff's affidavit for attachment that he was a nonresident is not important where no objection was made upon the trial to the testimony of defendant as to his residence. Ill. Rev. Stat. 1939, ch. 110, § 42, subpar. 3 [Jones Ill. Stats. Ann. 104.042].

For the reasons indicated the judgment of the superior court against the plaintiff on its demand set forth in its complaint for $5,926.13, and directing the delivery to the defendant of the $5,000 note and mortgage, is affirmed. The judgment of the court against the defendant upon his counterclaim seeking recovery of the $7,000 in cash pledged to plaintiff and the $250 salary due defendant is reversed and the cause is remanded with directions to the superior court to enter

judgments for the defendant as to these items, with interest.

*Affirmed in part and reversed in part and remanded with directions.*

O'CONNOR, P. J., and MATCHETT, J., concur.