Argued and submitted September 16, reversed November 13, 1991

# OREGON INSURANCE GUARANTY ASSOCIATION, *Appellant,*

*v.*

# ACTION CHRYSLER-PLYMOUTH-DODGE, INC.;
Al Hutchinson Volkswagen, Inc.;
Auto Martin, Ltd.; Beaverton Toyota Co., Inc.;
Berg Chevrolet-Oldsmobile, Inc.; Bick Snow Ford, Inc.;
Bill Olinger Lincoln Mercury, Inc.;
Brown Oldsmobile Co.; Burness Oldsmobile, Inc.;
Butler Ford, Inc.; Carner Chrysler-Nissan, Inc.,
dba Carner Chrysler-Plymouth-Dodge;
Charles E. Colvin, dba Chuck Colvin-AMC-Jeep-Renault;
Charles S. Wilson Co., dba Wilson Motors;
Coast Auto Center, Inc.;
Comrie Oldsmobile-Cadillac, Inc.;
Dale Walker Leasing Co., Inc.;
Damerow Auto Leasing Co., Inc.;
Damerow Auto Lease Co., dba Dalco Leasing;
Dave Hold, Inc.; Dunham Olds-Cadillac, Inc.;
Fisher Enterprise, Inc., dba Roberts & Redfield;
Forrest Pontiac-Buick-GMC, Inc.;
Fred Bauer Chevrolet, Inc.; Gary Worth, Inc.;
Hayden Motor Co.; Herzog Motors, Inc.;
Jay Allen Company; Jim Fisher Downtown Imports, Inc.;
Jim Fisher Nissan, Inc.; Jim Smolich Motors, Inc.;
Joe Fisher, dba Jim Fisher Volvo, Inc.;
Kendall Ford, Inc.; Kendall Nissan, Inc.;
Landmark Ford, Inc.; Larson Motors Co., Inc.;
Liberty Lincoln-Mercury, Inc.;
Lithia Chrysler-Plymouth, Inc.; Lithia Motors, Inc.,
dba Medford Dodge-Chrysler-Plymouth and Medford Honda;
Lovell Automobile Co.; Lum & Utti, Inc.;
Lyman Slack Motors; M & B Automotive, Inc.,
dba Valley Volkswagen-Mazda; Market Street Motors Co.;
Murray Chevrolet Co.; Murray-Holt Motors, Inc.;
Newberg Imports, Inc., dba Paul's Auto Imports;
R & A Wheels, Inc., dba Southern Oregon Subaru;
Ray Schultens Motors, Inc., dba Ft. Dalles Nissan;
Rey Reece Oldsmobile Isuzu, Inc.;
Riverside Motors, Inc.; Roberts & Redfield, Inc.;

Royal Moore Buick-Pontiac-GMC, Inc.;
Russ Chevrolet Company; Skinner Buick-Cadillac, Inc.;
Springfield Toyota, Inc.; Summit Ford-Mercury, Inc.;
Sunset Motor Co.; Surfside Volkswagen, Inc.;
Syd Dorn Chevrolet, Inc.;
Thomas Sales and Service, Inc.; Tom Gregg Motors, Inc.;
Town & Country Chevrolet Oldsmobile, Inc.;
Valley Chevrolet, Inc.; Valley River Dodge, Inc.,
dba Valley River Dodge-Subaru;
Vic Alfonso Cadillac, Inc.; Vic Alfonso Toyota, Inc.;
W.C. Ranch, Inc., dba Harvest Ford-Lincoln-Mercury;
Walt Johnson Lincoln/Mercury, Inc.;
Wayne Buck Chevrolet-Oldsmobile, Inc.;
Weiler Oldsmobile-GMC, Inc.;
Wentworth Buick GMC Trucks Co.;
Wentworth Chevrolet Co.; West Park Toyota, Inc.,
dba Sunset Toyota, Sunset Jeep/Eagle;
Wheeler Motors, Inc., dba Wheeler Toyota;
Williams/Wilson Automobile, Inc.,
dba Williams/Wilson Honda;
Williams/Wilson Dodge Subaru, Inc.;
Winema Motors, Inc., dba Lakeside Motors;
*Respondents,*
*and*

CARRERA MOTORS, INC.;
Cascade Vans, Inc.; Centennial Imports, Inc.;
Cliff Smith Motors, Inc.; Continental Imports, Inc.;
Cottage Grove Motor Co.; Country Coach, Inc.;
Crown Capital Corporation, dba Exoticar Company;
Delon Olds Co.; East County Jeep Eagle, Inc.;
Executive Auto Leasing and Sales, Inc.;
George Dugan Chevrolet Co.; Hundley-Bartle, Inc.;
Import Service Center, Inc., dba Garry Small Saab;
Jim Vick's Nissan, Inc.; Marv Tonkin Ford Sales, Inc.;
Marv Tonkin Leasing Co.; Milligan Motors, Inc.;
Newburg Auto Center, Inc.; North Valley Auto
Center, Inc., dba Premier Auto Center, Inc.;
Northside Ford Truck Sales, Inc.; Otto Roth, Inc.,
dba Northgate Auto Center; Pioneer Jeep-Eagle, Inc.;
Roberts Chrysler Plymouth, Inc.; Roth Motor Co., Inc.,
dba Roth BMW; Timberline Dodge, Inc.;

Trinity Sales & Leasing Co., Inc.,
dba Cascade Honda-Winnebago; University Motors, Inc.,
*Defendants.*

(A8902-01108; CA A66510)

820 P2d 846

John L. Langslet, Portland, argued the cause for appellant. With him on the briefs were Julie K. Bolt and Martin, Bischoff, Templeton, Langslet & Hoffman, and Thomas H. Tongue and Dunn, Carney, Allen, Higgins & Tongue, Portland.

Rick T. Haselton, Portland, argued the cause for respondents. With him on the brief were James P. Molloy and Lindsay, Hart, Neil & Weigler, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P. J.

Oregon Insurance Guaranty Association (OIGA) seeks a declaratory judgment that 74 automobile dealers (the dealers) are not entitled to a return of unearned premiums. ORS 734.510 to ORS 734.710. OIGA appeals from a judgment declaring that it must return the premiums. We reverse.

This action arose out of transactions between Consumer Indemnity Company (CIC) and the dealers. When a dealer sold a car, it would offer the buyer a service contract. Those contracts obligated the dealer to pay for covered repairs to the vehicle for one to five years after the sale. CIC sold the dealers automobile service contract indemnity policies that obligated CIC to pay for the same repairs to the same vehicle for the same term. For each service contract that it sold, the dealer remitted a specified premium to CIC for indemnity coverage for that contract. That one-time premium provided coverage for the full term of the dealer's service contract with the buyer.

Insurers covering certain forms of casualty loss in Oregon must be members of OIGA. ORS 734.540 to ORS 734.550. CIC was a "member insurer." ORS 734.510(7). On October 31, 1988, CIC became an "insolvent insurer." ORS 734.510(6). When a member insurer becomes an insolvent insurer, OIGA is obligated to pay all "covered claims" of the insolvent insurer arising within 30 days after the declaration of insolvency. ORS 734.570(1).

ORS 734.510(4) provides, in relevant part:

> "(a) 'Covered claim' means an unpaid claim, *including a claim for unearned premiums,* that arises out of and is within the coverage and limits of an insurance policy to which ORS 734.510 to 734.710 apply and which is in force at the time of the occurrence giving rise to the unpaid claim, made by a person insured under such policy * * *." (Emphasis supplied.)

The dealers rely on that provision for their assertion of a right to recover the unearned portion of the premiums that they paid CIC.[1]

---

[1] The dealers seek a pro-rata return of premiums.

OIGA claims that the trial court erred in refusing to enforce this policy provision:

"In the event of * * * cancellation by *you* or *us,* there will be no tender of unearned premiums. *We* will remain liable for *loss* covered by this policy until the expiration of all Vehicle Service Contracts covered by this policy." (Emphasis in original.)

The trial court found that CIC breached its contract by becoming insolvent. Therefore, the court held that OIGA could not enforce the non-return of premiums provision of the contract. Essentially, the trial court permitted the dealers to assert the same claims against OIGA that they could assert against CIC's receiver. However, unlike claims against a receiver, which are paid on a proportionate basis from the liquidated assets of the insolvent company, the trial court permitted the dealers to recover the full value of their claims from OIGA.

OIGA argues that the insurance policy must be enforced as if the insurer had not become insolvent. Because the dealers would have no right to a return of unearned premiums if CIC were solvent, they have no right to a return of premiums from OIGA. We agree.

The purpose of the insurance guaranty statutes, ORS 734.510 to ORS 734.710,

"is to provide for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer * * *." ORS 734.520.[2]

The statutes achieve those objectives by preserving the rights, duties and obligations of the parties as they existed before the declaration of insolvency for 30 days after the insolvency. ORS 734.570(2) provides that OIGA shall

"[b]e the insurer to the extent of the association's obligation on the covered claims and to such extent have all the rights, duties and obligations of the insolvent insurer as if the insured had not become insolvent."

---

[2] We construe ORS 734.510 to ORS 734.710 liberally to effect the purposes provided in ORS 734.520. ORS 734.530.

ORS 734.570(1) provides that OIGA shall

> "[b]e obligated to pay covered claims existing at the time of determination of insolvency of an insurer or arising within 30 days after the determination of insolvency * * *."

Essentially, OIGA provides stop-gap protection for insureds and claimants by providing 30 days of continuation coverage after a declaration of insolvency. For that period, OIGA steps into the shoes of the insolvent insurer. *Taylor v. Oregon Insurance Guaranty Assoc.*, 99 Or App 554, 558 n 1, 783 P2d 49 (1989), *rev den* 309 Or 522 (1990). OIGA's obligations are limited to those of the insurer "under the policy from which the claim arises." ORS 734.570(1). That provision also terminates OIGA's responsibilities if the policy expires or the insured cancels or replaces the policy. ORS 734.510(4)(b) limits OIGA's financial liability to the limits of liability contained in the underlying insurance policy. Other provisions of the guaranty statutes limit OIGA's rights and duties to those of the member insurer under the insurance policy. *See, e.g.,* ORS 734.630(1) (subrogation rights); ORS 734.700 (defense of actions).

Under the legislative scheme, an insured cannot recover more from OIGA than it could have from the insurer had there been no insolvency. Had CIC remained solvent, the dealers would not have been entitled to a return of unearned premiums on cancellation of the policies; they would have only been entitled to continued coverage for the duration of the policy term. When OIGA assumed CIC's obligations, the dealers had the same rights for the 30-day continued coverage period.

Although a "covered claim" includes a claim for unearned premiums, there can be no claim for unearned premiums unless the insured has a contractual right to them. Because the dealers had no contractual right to a return of unearned premiums, the trial court erred by ordering that the dealers were entitled to recover unearned premiums from OIGA.

Because of our disposition of the appeal, it is unnecessary to address the parties' other contentions.

Reversed.