[No. 28967-5-I.    Division One.    October 26, 1992.]

WASHINGTON PHYSICIANS SERVICE, *Appellant,* v. RICHARD
MARQUARDT, *as Receiver for Rainier National Life
Insurance Company,* ET AL, *Respondents.*

*John H. Pierce* of *King County Medical Blue Shield Law Department,* for appellant.

*Laurence E. Mason* and *Julin, Fosso, Sage, McBride & Mason,* for respondent Marquardt.

*Catherine A. Johnson, James E. Lobsenz,* and *Carney, Stephenson, Badley, Smith & Spellman,* for respondent Washington Life and Disability Insurance Guaranty Association.

FORREST, J. — Washington Physicians Service (WPS) appeals the trial court's determination that its claim against Rainier National Life Insurance Company (Rainier) is not entitled to priority as "unearned premiums". We affirm.

In 1972, WPS, a health care service contractor, and Rainier, an insurance company, entered into a contract to "provide for the underwriting" of certain claims under insurance policies negotiated between WPS and its policyholders. Rainier underwrote and determined the premiums for optometric and chiropractic benefits provided by WPS. These premiums, which were added to premiums charged for other benefits supplied by WPS, were paid to Rainier after WPS collected them. Rainier's premiums received from WPS were deposited into a common fund for the payment of claims. Any premiums collected in excess of the sum of claims paid and Rainier's administration fee were to be returned to WPS during August following the fiscal year of any year the agreement was in effect.

As of June 30, 1976, the date the contract was canceled, Rainier held $71,750.51 in excess premiums. On March 1, 1977, Rainier was declared insolvent and a receiver was appointed. In June of 1977, WPS filed a proof of claim against

Rainier for the $71,750.51 which had not been returned to WPS.

On May 7, 1991, Richard Marquardt, Washington State Insurance Commissioner and receiver of Rainier, issued a notice of hearing on the final report to terminate the receivership and distribute assets. The final report stated that Washington Life and Disability Insurance Guaranty Association (WLDIGA), a statutory entity formed to carry out the obligations of insolvent insurers, filed claims with Rainier totaling $1,156,200, representing policyholder claims and administrative expenses incurred by WLDIGA as a result of the liquidation. On June 25, 1991, WPS filed a motion for payment of its claim for unearned premiums. On June 26, 1991, the trial court entered an order approving the final report, and on July 12, the trial court held a hearing on the priority of the claim of WPS. The court held that the claim of WPS is not entitled to priority as "unearned premiums", and that no assets were available for WPS after the allowance of WLDIGA's claim.

WLDIGA is a nonprofit unincorporated legal entity created under the Washington Life and Disability Insurance Guaranty Association Act, RCW 48.32A. One of its purposes is to provide a mechanism for the payment of claims asserted by Washington policyholders against insolvent insurers. A statutory priority of claims controls the distribution of the funds in controversy:

> (2) The priorities of distribution in a liquidation proceeding shall be in the following order:
>
> . . . .
> (d) Claims arising out of and within the coverages of insurance policies issued by the insurer being liquidated for losses incurred, including:
> (i) Third party claims and claims for unearned premiums;
>
> . . . .
> (e) All other claims.

RCW 48.31.280. WPS asserts that its claim is entitled to priority based on the provisions of subsection (d)(i) for "unearned premiums". We disagree.

As WLDIGA points out, WPS's claim is based on a contract between WPS and Rainier and not an insurance contract. The controlling paragraph reads as follows:

> 4. Rainier will deposit all premiums received by it pursuant to all contracts entered into under this agreement in a common fund for payment of claims. . . . [A]fter the end of each fiscal year . . . settlement will be made on a cash basis with an estimated claim liability for claims incurred and unreported or due and unpaid and an estimated amount for premiums due and unpaid. Any excess of premiums received by Rainier or due Rainier and unpaid with respect to the fiscal year, under this agreement, over the amount of claims actually paid and incurred and the percentage of premium income the parties have agreed Rainier may retain as compensation shall be returned to WPS.

■ We find the agreement to be a joint venture between WPS and Rainier for writing group health insurance and not an insurance policy. It has no elements of such a policy.[1] WPS is not indemnified for any loss to its property or for any liability it might incur to third parties. WPS has not cited to any portion of the contract spelling out that it is obligated in turn to make any specific refund to any of the individual insureds. Indeed, for all that appears, WPS may apply these funds to other claims or retain them and merely take them into account in quoting new premiums to its insureds. Nor is WPS's claim "within the coverage" because it is not based on any coverage. All covered claims have been paid. While the *amount* to be paid by Rainier to WPS is measured by the cost experience under the insurance contracts, the *obligation to repay* is founded on the joint venture contract. Accordingly, WPS has not satisfied the requirement of RCW 48.31.280(2)(d). Its claim is not one "arising out of and within the coverages of insurance policies issued by the insurer being liquidated . . .".

---

[1]The term "policy" is defined by RCW 48.18.140(1) as follows: "(1) The written instrument, in which a contract of insurance is set forth, is the policy." The term "insurance" is defined by RCW 48.01.040 as follows: "Insurance is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies."

Nor does WPS's claim satisfy the second requirement, RCW 48.31.280(2)(d)(i), that it be a claim for "unearned premiums". The contract does not use the term "unearned premium" but refers to the funds in question as "any excess of premium received". Similar language is contained in the proof of claim WPS filed against Rainier.[2] Indeed, it is not until well into the proceedings that WPS begins to call its claim one for "unearned premiums" so as to meet the statutory requirement for priority.

▮ The term "unearned premium" is not statutorily defined. Where a term is not defined in a statute, courts look to dictionaries and to definitions developed by case law. Unlike many terms, "unearned premium" has a well established meaning, namely, a premium which is not earned because the policy has been terminated before the end of its term. *Tyler v. Michigan Millers Mut. Ins. Co.;*[3] *Downey v. Humphreys;*[4] *National Mut. Church Ins. Co. v. Magill;*[5] *Price v. Guaranty Nat'l Ins. Co.*[6] "Unearned premium" has been defined as "that portion of the premium paid by insured which is returnable to him on cancellation of the policy during its term." (Footnote omitted.) 44 C.J.S. *Insurance* § 340(a) (1945). The *Dictionary of Insurance* defines unearned premium as follows:

> **Unearned premium** That part of the original premium not yet earned by the insurance company and therefore due the policyholder if the policy should be cancelled.

L. Davids, *Dictionary of Insurance* 305 (6th rev. ed. 1983). The *Dictionary* defines the term "earned premium" as:

---

[2] In 1977, Washington Physicians Service filed a proof of claim in superior court with Marquardt, Rainier's receiver, and claimed that the amount due from Rainier consisted of "funds in excess of agreed cost and amount of claims."

[3] 5 Wn. App. 648, 491 P.2d 655 (1971).

[4] 102 Cal. App. 2d 323, 227 P.2d 484 (1951).

[5] 306 Ill. App. 534, 29 N.E.2d 306 (1940).

[6] 456 P.2d 108 (Okla. 1969).

> **Earned premium** That part of an insurance premium which pays for the protection the insurance company has already given on a policy. Thus insurance on which a premium has been paid one year in advance, will at the end of six months be half earned by the insurance company.

*Dictionary of Insurance*, at 103. WPS cites no authority specifically holding that the amount of premiums received in excess of the claim costs and administrative charges under a policy, where coverage was in effect for the entire period covered by the premium, constitutes "unearned premiums". "Unearned" and "premium", although not in precise juxtaposition, are used together elsewhere in the insurance code to mean that portion of a premium covering a period when coverage has been terminated.[7] As a result, WPS's position would result in "unearned premium" having two different and inconsistent meanings, a thoroughly undesirable and unnecessary result.

Finally, WPS suggests that public policy considerations of fairness require that it receive priority over WLDIGA. Insofar as WLDIGA loses the benefits of these funds, the cost will fall on the taxpayers of the State of Washington, because WLDIGA is in turn financed by allowing insurance companies to deduct the money that they are required to contribute to WLDIGA from their tax returns.[8] As a matter of policy between WPS and the taxpayers, we think the taxpayers have a better claim.

Affirmed.

PEKELIS and KENNEDY, JJ., concur.

---

[7] RCW 48.18.290(4) reads, in part, as follows:

"The portion of any premium paid to the insurer on account of the policy, unearned because of the cancellation and in amount as computed on the pro rata basis, must be actually paid to the insured or other person entitled thereto as shown by the policy or by any endorsement thereon, or be mailed to the insured or such person as soon as possible, and no later than forty-five days after the date of notice of cancellation to the insured for homeowners', dwelling fire, and private passenger auto."

[8] RCW 48.32A.090(3).