[No. 22741-0-II. Division Two. March 19, 1999.]

SEATTLE-FIRST NATIONAL BANK, ET AL., *Respondents*, v.
WASHINGTON INSURANCE GUARANTY ASSOCIATION, *Appellant*.

*Arnold J. Barer* and *Elena L. Garella* of *Law Offices of Arnold J. Barer*, for appellant.

*Robert L. Wilson* of *Karr Tuttle Campbell*, for respondents.

HUNT, J. — Washington Insurance Guaranty Association (WIGA) appeals a summary judgment returning unearned premiums and awarding prejudgment interest to Seattle-First National Bank (SeaFirst) and American Leasing Company (ALC) and awarding attorney fees to SeaFirst.

SeaFirst and ALC cross-appeal, challenging the trial court's proration of unearned premiums, allocation of prejudgment interest, and reduction of SeaFirst's lodestar calculation of attorney fees. Holding that SeaFirst and ALC are entitled to return of all unearned premiums and prejudgment interest but that the trial court erred in prorating premiums, we affirm in part, reverse the proration of unearned premiums, and remand for recalculation of attorney fees.

## FACTS

In August 1981, SeaFirst purchased residual value insurance (RVI)[1] from Integrity, a New Jersey corporation, to establish a guaranteed value for vehicles it financed through automobile lease programs, usually three years in duration. Under the insurance contract, Integrity was to purchase the vehicles from SeaFirst within 90 days of their scheduled lease termination dates. For this coverage, SeaFirst paid $250 annually, plus 2 to 2.25 percent of each vehicle's calculated residual value. An industry publication was used to set the residual value, from which was deducted damage beyond normal wear and tear, yielding the guaranteed value.

Every month, SeaFirst would enroll new vehicles by sending Integrity a list of vehicle identification numbers (VIN), options lists, and scheduled lease termination dates for the automobiles SeaFirst had financed during that month. Integrity would then charge SeaFirst the agreed percentage of those automobiles' residual values. Several years later, when an automobile lease terminated and the lessee did not choose to purchase the vehicle, SeaFirst tendered the vehicle to Integrity, which then paid SeaFirst the vehicle's agreed residual value.

SeaFirst's contract with Integrity provided that "fees [are] fully earned by the Company [Integrity] at the time

[1]Residual value insurance guarantees to a lessor that at the end of a specified lease period, the leased item will be worth a pre-agreed value. The risk insured by residual value insurance accrues only when the lease terminates; it is not amortized over the life of the policy.

the vehicle is enrolled and shall not be refundable." The contract also provided that although either party could terminate the contract, termination would "not affect the obligations of the parties in existence at the date of termination." The contract further provided for recovery of attorney fees incurred to enforce the contract.

In 1982, Bill Pierre Leasing, Inc., doing business as American Leasing Company, also purchased residual value insurance from Integrity. The agreement between Integrity and ALC differed only slightly from Integrity's contract with SeaFirst: There was no provision for recovery of attorney fees; and ALC could sell a vehicle rather than tender it to Integrity, in which case, Integrity would pay ALC the difference between the sale price and the previously calculated residual value.

On March 24, 1987, the New Jersey Superior Court declared Integrity insolvent. ALC presented to the New Jersey liquidator a claim for $54,090.18 in unearned premiums. SeaFirst presented to the liquidator a "loss claim" for $29,638.36, plus $44,775.76 in unearned premiums, for a total of $74,414.12 The New Jersey liquidator denied both claims.

On April 20, 1987, ALC presented its claim for $54,090.18 to the Washington Insurance Guaranty Association. On September 1, 1987, SeaFirst presented its claim for $74,414.12 to WIGA. WIGA denied both claims, asserting that RVI was not a covered form of insurance under the Revised Code of Washington (RCW) 48.32, the Washington Insurance Guaranty Association Act (the Act) and, thus, WIGA had no statutory duty to reimburse either SeaFirst or ALC.

On February 5, 1988, in Thurston County Superior Court, SeaFirst and ALC filed suit against WIGA to recover losses resulting from Integrity's insolvency and resultant inability to perform under its RVI contracts. Both parties moved for summary judgment. On July 7, 1989, the court granted WIGA's motion, held that the policies did not fall under the Act, and dismissed SeaFirst's and ALC's complaints.

On direct review, the Washington Supreme Court held that RVI is a form of casualty insurance and, therefore, falls under the Act. *Seattle-First Nat'l Bank v. Washington Ins. Guar. Ass'n,* 116 Wn.2d 398, 804 P.2d 1263 (1991). The court further held that SeaFirst was entitled to attorney fees as provided in its contract with Integrity, but that because ALC's contract did not so provide, ALC was not entitled to attorney fees. *Seattle First Nat'l Bank,* 116 Wn.2d at 412-13.[2]

On remand, SeaFirst and ALC again moved for summary judgment. SeaFirst claimed an actual loss of $29,638.36,[3] plus $44,775.76 in unearned premiums. ALC sought return of $54,090.18 in unearned premiums. WIGA conceded SeaFirst's claim for $29,636.36, but disputed both Sea-First's and ALC's unearned premium claims. Based on a "lodestar" adjustment to its asserted hourly fees of $28,695.00, SeaFirst asked for $43,042.50 in attorney fees.

On March 18, 1993, the trial court issued a letter opinion, in which it awarded SeaFirst's actual loss claim in its entirety, plus prejudgment interest, and "equitabl[y]" prorated ALC's and SeaFirst's unearned premiums with no prejudgment interest. The trial court rejected SeaFirst's lodestar computation and awarded actual attorney fees of $28,695. Neither party presented an order of judgment until four years later, when SeaFirst's order of judgment was entered on November 20, 1997.[4]

## ANALYSIS
### I. STANDARD OF REVIEW

When reviewing an order of summary judgment, we conduct the same inquiry as the trial court. *Wilson v. Stein-*

---

[2]The court did not address the issue of unearned premiums because it had not been raised in the trial court.

[3]This loss represented Integrity's nonpayment of residual value of insured vehicles whose lease terms expired no later than 30 days after Integrity's insolvency. Because of WIGA's concession, this claim is not before us.

[4]In awarding prejudgment interest, the trial court excluded the four-year period between its opinion letter and the formal entry of judgment.

*bach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). If pleadings, depositions, affidavits, and admissions, viewed in a light most favorable to the nonmoving party, show there is no genuine issue of material fact, and the party is entitled to judgment as a matter of law, summary judgment is proper. *Id.*

## II. UNEARNED PREMIUMS

SeaFirst and ALC paid for insurance coverage that Integrity can no longer provide because it lacks funds. The Legislature enacted The Washington Insurance Guaranty Association Act, RCW 48.32, to prevent this injustice.[5] WIGA can pay claims that became due within 30 days of Integrity's insolvency, but for leases that ran beyond this date, SeaFirst and ALC no longer have coverage. We read the Act as requiring WIGA to return premiums paid for RVI coverage of vehicles whose lease termination dates fell after the 30-day period covered by WIGA.

### A. WASHINGTON INSURANCE GUARANTY ASSOCIATION (WIGA)

WIGA is a statutory creature enabled by RCW 48.32. The association comprises every company authorized to sell insurance in Washington, other than those transacting specifically exempt types of insurance. RCW 48.32.040. WIGA members contribute funds to cover policyholders' financial losses when an insurer becomes insolvent. RCW 48.32.010, .060, .070. The Act provides, in part, as follows:

> The association [WIGA] shall [b]e obligated to the extent of the covered claims existing prior to the order of liquidation and arising within thirty days after the order of liquidation . . . [and] be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.

RCW 48.32.060.

---

[5]RCW 48.32.010 states: "The purpose of this chapter is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer . . . ."

■ RCW 48.32.910 requires courts to construe the Act liberally to comport with the purposes outlined in RCW 48.32.010. A prime purpose is prompt payment of covered claims to prevent financial loss to policyholders. In essence, WIGA steps into the shoes of the insolvent insurer and covers the policyholder as if the insurer had remained solvent. *Washington Ins. Guar. Ass'n v. Department of Labor & Indus.*, 122 Wn.2d 527, 535, 859 P.2d 592 (1993); RCW 48.32.010, .060(1)(b).

WIGA's obligations are triggered when an insurer becomes insolvent and an unpaid claim is "covered." RCW 48.32.060(1)(a). A "covered claim" is "an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy . . . ." RCW 48.32.030(4). WIGA is liable for unpaid claims arising before the insurer's insolvency and until 30 days after insolvency. RCW 48.32.060(1)(a). WIGA is not liable beyond the face amount of the policy or $300,000.00, whichever is lower. RCW 48.32.060(1)(a).

SeaFirst and ALC contend that WIGA's reluctance to pay is a violation of its statutory duties to investigate and to pay covered claims. RCW 48.32.060(1)(d). WIGA counters that it has a corresponding duty to deny claims that are not statutorily authorized, such as the claims SeaFirst and ALC assert. The question here is whether SeaFirst's and ALC's claims for refund of unearned premiums are covered claims under the Act.

### B. UNEARNED PREMIUMS

Although the Act originally excluded coverage for unearned premiums,[6] the Legislature amended the Act expressly to include unearned premiums:

> "Covered claim" means an unpaid claim, *including one for unearned premiums*, which arises out of and is within the coverage of an insurance policy . . . .

RCW 48.32.030(4) (emphasis added).[7]

---

[6]*See* LAWS OF 1975, ch. 109, § 3.

[7]To illustrate this point further, we cite a brief excerpt from the discussion

Both SeaFirst and ALC presented claims for unearned premiums, which WIGA denied based on the insurance contract language. Both contracts provided that Integrity earned premiums upon the vehicles' enrollment and that such premiums were not refundable. But both contracts also provided that if either party terminated the agreement, obligations predating such termination would continue in force. Thus, once a vehicle was enrolled, Integrity was obligated to pay the residual value at the vehicle lease surrender date, regardless of whether the underlying insurance policy was still in effect to insure additional vehicles.

 Contracts for insurance must comply with statutes. Noncompliant contract provisions will not invalidate the contract; rather, we construe such provisions to comply with the statutes. RCW 48.18.510. That Integrity's contract characterizes the premiums as "earned when paid" is, therefore, not dispositive. An "earned" premium pays for protection an insurance company is already providing. *Washington Physicians Serv. v. Marquardt*, 67 Wn. App. 650, 654-55, 838 P.2d 142 (1992). But Integrity can no longer provide the coverage for which SeaFirst and ALC paid premiums. Such premiums are "not earned because the policy has been terminated before the end of its term." *Marquardt*, 67 Wn. App. at 654. Under RCW 48.18.290, an insurer who terminates an insurance policy before its

---

that took place on the House floor:

> Mr. Boldt: This bill is going to make it better for the consumer?

> Mr. Ceccarelli [HB 1497 sponsor]: It will make it better for the consumer because the bill actually addresses itself to unearned premiums and presently they are paying for earned premiums, but we're addressing ourselves to unearned premiums. In other words, if you have just taken out a premium in a company and find out the company has gone broke and you have no insurance, you don't get your money back; this way you will at least get your money back.

HOUSE JOURNAL, 44th Legis., 2d Ex. Sess. at 764 (1976). The bill's sponsors intended that policyholders "get their money back" when an insurance company becomes insolvent and an insured's paid premiums become "unearned."

promised coverage expires must return any unearned premiums.

Harmonizing with the purpose of the Act, we liberally construe "unearned premiums" to include premiums paid for protection the insured does not receive. RCW 48.18.290 requires that these "unearned premiums" be refunded; as a result of Integrity's insolvency, WIGA must fulfill Integrity's obligations.

## C. OREGON LAW

WIGA cites an Oregon case for the following propositions: Under Integrity's contract, premiums are earned when paid; the premiums would not have been refundable if Integrity had remained solvent; and, therefore, neither SeaFirst nor ALC can recover unearned premiums. Interpreting a statutory scheme similar to Washington's, the Oregon court reasoned as follows:

> Under the legislative scheme, an insured cannot recover more from OIGA than it could have from the insurer had there been no insolvency. Had CIC remained solvent, the dealers would not have been entitled to a return of unearned premiums on cancellation of the policies; they would have only been entitled to continued coverage for the duration of the policy term. When OIGA assumed CIC's obligations, the dealers had the same rights for the 30-day continued coverage period.

*Oregon Ins. Guar. Ass'n v. Action Chrysler-Plymouth-Dodge, Inc.*, 109 Or. App. 556, 820 P.2d 846, 849 (1991).[8] If we were to adopt this reasoning in Washington, insureds such as SeaFirst and ALC, although entitled to continued coverage for the duration of the policy term, would lose

---

[8]Vehicle customers bought service contracts from automobile dealers, who in turn obtained insurance from Consumer Indemnity Company (CIC), which covered the actual costs of the vehicle repairs. The contract between the dealers and CIC contained the following clause, similar to the one in the Integrity contracts: "In the event of . . . cancellation by *you* or *us*, there will be no tender of unearned premiums. We will remain liable for *loss* covered by this policy until the expiration of all Vehicle Service Contracts covered by this policy." *Action Chrysler*, 820 P.2d at 848.

both insurance coverage for leased vehicles returned after WIGA's statutory 30-day period and their previously paid premiums.

We decline to follow Oregon law because it is contrary to the policy behind Washington's Act: "The WIGA is not designed to augment the insurance recovery which an injured party is entitled to receive; it merely *replaces* insurance coverage properly procured but lost through the insurer's insolvency." *Prutzman v. Armstrong,* 90 Wn.2d 118, 121, 579 P.2d 359 (1978) (emphasis added). Instead, we follow our Legislature's mandate to construe liberally to effect the Act's purpose[9] "to avoid financial loss to claimants or policyholders because of the insolvency of an insurer . . . ." RCW 48.32.010. We hold that claims for unearned premiums under RCW 48.32.030(4) include premiums that have been contractually described as "earned," but which become unearned upon the insurer's insolvency.

III. PRORATION OF UNEARNED PREMIUMS

WIGA asserted below that: (1) any unearned premiums should be prorated under insurance industry standards; (2) the premium should be divided by the length of the lease in months; and (3) only for months beyond April 23, 1987,[10] should premiums be returned as unearned. SeaFirst and ALC counter that prorating premiums is improper because RVI does not provide coverage for the duration of the policy, but, rather, provides protection at only one specific time, namely termination of each vehicle's lease.

The trial court's opinion letter focuses on proration as follows:

> The question then becomes whether the return of premiums should be prorated to include only the period after cancellation of coverage. I have reviewed the arguments relating to

[9]RCW 48.32.910

[10]April 23, 1987, represents the end of WIGA's statutory 30-day period for payment of the insolvent insurer's claims.

whether the entire premium should be returned or whether a pro-rated share should be returned. The return of premium, in either case, is in the nature of an equitable remedy because the information is unavailable to support claims for payment under the policy of coverage. Accordingly, I find it is equitable to return premiums for enrolled vehicles on a prorated basis from the date of cancellation of the insurance, thirty days after Integrity's insolvency.

This letter suggests that the trial court awarded the return of unearned premiums based on equitable principles.

■ But WIGA is a statutory creation, and its powers and duties are statutorily prescribed. RCW 48.32.060. WIGA is obligated only to the extent of covered claims, which "means an unpaid claim, including one for unearned premiums, which arises out of and [are] within the coverage of an insurance policy. . . ." RCW 48.32.030(4). Conversely, trial courts cannot fashion equitable remedies that do not arise from the coverage of an insurance policy.[11] *See* RCW 48.32.030 (4); 48.32.060.

■ RVI does not insure an ongoing risk, but rather "insures a definite, minimum value of an identified asset at a specific date in the future." *Seattle First Nat'l Bank*, 116 Wn.2d at 404. If SeaFirst and ALC had received some ongoing protection over the life of the RVI policy, proration might be appropriate. But, here, there could be no insurance benefit until the insured vehicles' lease termination dates; before those dates, Integrity owed nothing, other than its promise to pay in the future.

The trial court noted the difficulty in determining residual values of the vehicles because so much time had passed since Integrity's insolvency. But the amount of the residual value claims is immaterial because SeaFirst and ALC could not file damage claims for vehicles after WIGA's statutory period, which ran for 30 days following Integrity's

---

[11]Washington courts have ordered equitable proration of returned premiums, but not when interpreting whether WIGA is responsible for the claim. *Cf. Continental Ins. Co. v. Paccar, Inc.*, 96 Wn.2d 160, 634 P.2d 291 (1981).

insolvency.[12] In short, SeaFirst and ALC could not present to WIGA claims for vehicles with lease termination dates beyond April 23, 1987.

In contrast, the value of SeaFirst's and ALC's claims for unearned premiums is easily ascertainable from their Proofs of Claim to the New Jersey liquidator. These unearned premiums should have been returned in full. The trial court erred in prorating them.

#### IV. PREJUDGMENT INTEREST ON RVI UNEARNED PREMIUM CLAIMS

■ We review a trial court's award of prejudgment interest for an abuse of discretion. *Colonial Imports v. Carlton N.W., Inc.*, 83 Wn. App. 229, 921 P.2d 575 (1996). SeaFirst and ALC argue that the trial court erred by denying them prejudgment interest on their unearned premium claims and by limiting the prejudgment interest on SeaFirst's actual loss claim to March 18, 1993, rather than November 20, 1997. WIGA replies that (1)because the trial court labeled the unearned premium remedy as "equitable," prejudgment interest is not available for the unearned premium claim; and (2) prejudgment interest was properly limited to March 18, 1993, because SeaFirst could have presented the order for judgment at anytime after the trial court's opinion letter on that date.[13]

Whether WIGA is responsible for prejudgment interest is a case of first impression in Washington. Other states, however, have addressed the issue with respect to their WIGA counterparts:

Missouri Prejudgment interest is considered incidental to the insolvent insurer's duty

---

[12]WIGA is responsible for all unpaid claims through a period 30 days beyond the date of insolvency, in this case, April 23, 1987. Thus, vehicles with lease termination dates before then could have been presented to WIGA as unpaid claims.

[13]In its opinion letter the trial court awarded prejudgment interest on SeaFirst's residual damage claims but did not award prejudgment interest on the prorated unearned premiums. Yet the final order signed four years later does not reflect this prejudgment interest award. Because the trial court originally awarded prejudgment interest and because we remand for entry of damages to SeaFirst and ALC, we address the issue of prejudgment interest in an effort to promote justice and to facilitate a decision on the merits. RAP 1.2.

to pay covered claims; such interests can be assessed against Missouri's insurance guaranty association, MPCIGA, which is statutorily required to assume the insolvent insurer's obligations, including payment of covered claims and interest. *Missouri Property & Cas. Ins. Guar. Ass'n v. Pott Indus.*, 971 S.W.2d 302 (Mo. 1998).

Kentucky

Prejudgment interest is also available against the Kentucky Insurance Guaranty association, even above the statutory cap amount. *Stone v. Kentucky Ins. Guar. Ass'n*, 908 S.W.2d 675 (Ky. Ct. App. 1995).

New Mexico

The New Mexico guaranty statutory scheme does not exclude prejudgment interest, which is available under other statutes; thus, prejudgment interest may be assessed against the New Mexico insurance guaranty association. *Aztec Well Servicing Co. v. Property & Cas. Ins. Guar. Ass'n*, 115 N.M. 475, 853 P.2d 726 (1993).

South Carolina

Similarly, because the South Carolina legislature did not specifically exclude prejudgment interest, such interest is available against the SCPCIGA. *Builders Transp., Inc. v. South Carolina Property & Cas. Ins. Guar. Ass'n*, 307 S.C. 398, 415 S.E.2d 419 (Ct. App. 1992).[14]

WIGA argued to the trial court that a North Carolina

---

[14]*But see* Nebraska's statutory scheme, which does not allow prejudgment interest; instead, such liability must arise under the policy. *Nebraska Life & Health Ins. Guar. Ass'n v. Dobias*, 247 Neb. 900, 531 N.W.2d 217 (1995). In contrast to Washington's Act, the Nebraska guaranty act does not require the association to assume all rights, duties, and obligations of the insolvent insurer. *Dobias*, 531 N.W.2d 217; RCW 48.32.060(1)(b).

case should preclude any award of prejudgment interest against WIGA. In *City of Greensboro v. Reserve Ins. Co.*, the North Carolina court held that prejudgment interest was not a proper award against the state guaranty association because (1) the association's liability arises from statutory mandates, not contractual mandates; and (2) the association is not the legal successor to the insolvent insurer, but "only to the extent of covered claims, which shall not include any amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises." *City of Greensboro v. Reserve Ins. Co.*, 70 N.C. App. 651, 321 S.E.2d 232, 240 (1984). We note that our Washington statutory scheme contains language similar to North Carolina's statute, under which WIGA must pay covered claims, but not an amount "in excess of the face amount of the policy from which the claim arises." RCW 48.32-.060(1)(a).

██ But we decline to follow North Carolina. Earlier in the history of this case, when SeaFirst, ALC, and WIGA were before the Washington Supreme Court, WIGA argued that it should not be liable for attorney fees because: (1) the statutory scheme does not specifically provide for such an award; and (2) this action does not involve enforcing rights under the RVI policy but, rather, concerns the scope of WIGA's liability. *Seattle First Nat'l Bank*, 116 Wn.2d at 412-13. The court disagreed, stating that this is an action on the insurance contract and, because WIGA's liability arose under Integrity's contract, which provided for attorney fees, such an award was proper. *Id.*; RCW 48.32-.030(4).

██ Analogous reasoning leads to the conclusion that WIGA is also liable for prejudgment interest here. In Washington, "[p]rejudgment interest is granted to compensate a party for the loss of use of money to which he was entitled." *Jones v. Best*, 134 Wn.2d 232, 242, 950 P.2d 1 (1998). The claim need not arise out of contract or any specific cause of action; but it is available

(1) when an amount claimed is "liquidated" or (2) when the

amount of an "unliquidated" claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion.

*Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968).

Prejudgment interest is favored in the law because it promotes justice. *Prier,* 74 Wn.2d 25, 34; *Universal/Land Constr. v. City of Spokane,* 49 Wn. App. 634, 641, 745 P.2d 53 (1987). Because RCW 48.32 does not specifically exclude prejudgment interest from covered claims, and because WIGA's liability arises from the insurance contract, we hold that prejudgment interest is a proper award under Washington's statutory scheme.

### A. Period Applicable to Prejudgment Interest

Prejudgment interest accrues from the date the claim arose to the date of judgment. *Hansen v. Rothaus,* 107 Wn.2d 468, 473, 730 P.2d 662 (1986). "[T]he right to claim unearned premiums is created by the adjudication of insolvency." *Agency Budget Corp. v. Washington Ins. Guar. Ass'n,* 93 Wn.2d 416, 422, 610 P.2d 361 (1980). Both SeaFirst's and ALC's unearned premium claims are liquidated; they are ascertainable with certainty on the date of Integrity's insolvency. Thus, the liquidated claims for unearned premiums can properly bear prejudgment interest from the date of Integrity's insolvency.

### B. Four-Year Delay

Four years elapsed between the trial court's 1993 opinion letter granting summary judgment and the 1997 entry of the formal order of judgment. The trial court did not allow prejudgment interest to accrue during this four-year period. Counsel for SeaFirst and ALC presented alternative orders, including one that did not contain interest for the four-year period, although counsel argued that such

prejudgment interest should be awarded. The trial court ruled that SeaFirst had forgone its right to collect interest by not presenting its judgment during the four years; counsel for SeaFirst asserted that WIGA could have presented an order during that period as well. The trial court noted that although either party could have presented an order, neither party did.

■■■ WIGA asserts that trial courts have discretion to deny prejudgment interest under circumstances described in *Colonial Imports*, in which Division One held:

> that prejudgment interest on liquidated claims ordinarily is a matter of right, but that Washington trial judges have discretion to disallow such interest during periods of unreasonable delay in completing litigation that is attributable to claimants.

*Colonial Imports*, 83 Wn. App. at 245. If the four-year period is an unreasonable delay attributable to SeaFirst and ALC, then prejudgment interest for that period can be denied as a matter of trial court discretion.

In its motion for entry of judgment, SeaFirst did not explain the delay, but merely stated that it was having difficulty determining the amounts actually awarded by the trial court on March 18, 1993. WIGA responded by asking the court to "take into account the unreasonable delay of Plaintiffs and reduce both the rate of interest and the time for which interest is granted." Thus, the reason for the delay is not clearly explained. On the record before us, the unexplained four-year delay in presenting an order of judgment appears unreasonable. Therefore, we agree with the trial court and hold that SeaFirst and ALC are not entitled to prejudgment interest for this four-year period from March 18, 1993, to November 20, 1997.

### V. APPORTIONMENT OF ATTORNEY FEES

■■■■ Review of a trial court's award of attorney fees is a fact-specific inquiry; the reasonableness of fees depends on the circumstances of each case. *Schmidt v. Cornerstone Inv., Inc.*, 115 Wn.2d 148, 169, 795 P.2d 1143 (1990). We

will not disturb on appeal an award of attorney fees unless the trial court exercised its discretion in a manifestly unreasonable manner or based its decision on untenable grounds. *Progressive Animal Welfare Soc'y v. University of Wash.*, 114 Wn.2d 677, 689, 790 P.2d 604 (1990). But we will reverse an award of attorney fees if the record fails to mention the method the trial court used to calculate fees or if the court used an improper method. *Brand v. Department of Labor & Indus.*, 91 Wn. App. 280, 288, 959 P.2d 133 (1998); *Animal Welfare*, 114 Wn.2d at 689.

The Washington Supreme Court held that attorney fees were available to SeaFirst in this case because the underlying insurance contract provided for attorney fees incurred to enforce the policy. But such fees were not available to ALC because its policy made no provision for fees. *Seattle First Nat'l Bank*, 116 Wn.2d at 412-13. The trial court set forth its method of computing fees in its March 18, 1993, letter opinion, rejecting the lodestar calculation presented by SeaFirst and allowing SeaFirst only its actual attorney fees.

In Washington, the preferred method for determining reasonable attorney fees is the lodestar evaluation. *Brand*, 91 Wn. App. 280, 289.[15] On November 25, 1992, SeaFirst presented its lodestar evaluation to the trial court in a declaration of counsel, CP 149-60, which included an itemized accounting of 266 hours expended on the lawsuit, CP 159, the rates of each attorney working on the case, and the resulting sum of $29,995.00. SeaFirst then added an anticipated fee for the remaining litigation ($1,200) and costs ($269), for a total of $31,195.00. Because ALC was not entitled to fees under its contract with Integrity, SeaFirst deducted $2,500.00 (21 hours) from the total.

SeaFirst justified the scant 21 hour allocation to ALC by asserting that "[t]he remaining services, principally the

---

[15]First, the party multiplies the hours reasonably expended on the lawsuit by a reasonable hourly rate. Second, the party adjusts the result based on factors such as the quality of representation, the difficulty of issues, or the contingent nature of the suit. *Brand*, 91 Wn. App. at 290; *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 593-94, 675 P.2d 193 (1983).

significant amount of research and briefing, would have been required in the representation of Seattle First alone and thus are appropriately reimbursed to Seattle First."[16] For its portion, SeaFirst then applied a lodestar adjustment upwards of 50 percent, based on the novel issues presented in this contingency fee case; the lodestar figure was $43,042.50.

■ Here, counsel has presented nothing other than a blanket statement that the attorneys worked 21 hours for ALC and 245 hours for SeaFirst; counsel has not presented his fee agreement with the parties.[17] Counsel claims the work had to be done for SeaFirst even without ALC's participation because the same issues concerned both parties. It appears manifestly unreasonable that counsel apportioned the fees between SeaFirst and ALC in such a manner, roughly 92 percent to SeaFirst and 8 percent to ALC.

Based on the record before us, we hold that the trial court abused its discretion by awarding fees to SeaFirst based on such a skewed apportionment. We remand for recalculation of a reasonable attorney fee award to SeaFirst. ALC should bear attorney fees in proportion to work performed on its behalf. If work was performed jointly for ALC and Seafirst, then ALC should pay its pro rata share.

## VI. ATTORNEY FEES ON APPEAL

■ Both WIGA and SeaFirst have requested fees under RAP 18.1. *See Seattle First Nat'l Bank*, 116 Wn.2d at 412-

---

[16]SeaFirst made this argument to the Washington Supreme Court with regard to fees in its earlier appeal, but the court commissioner was not persuaded. The contingency fee agreement among SeaFirst, ALC, and its counsel allocated net recovery on the basis of 60% to SeaFirst and 40% to ALC. The commissioner awarded SeaFirst $16,000 as a reasonable fee for the appellate work, which was roughly half the claimed amount. Claiming fees at trial, counsel apportioned fees roughly 92 percent to SeaFirst and 8 percent to ALC. WIGA also asserts that the commissioner's ruling on fees should become the law of the case. But that ruling concerned fees on appeal, a different matter.

[17]Contingent fee agreements must be in writing. RPC 1.5(c)(1). Apparently, counsel for SeaFirst/ALC presented the agreement to the Supreme Court commissioner upon demand.

13. The Integrity contract grants SeaFirst the right to recover attorney fees. As the prevailing party, SeaFirst is entitled to an award of reasonable attorney fees incurred in this appeal. We therefore grant attorney fees to SeaFirst and deny attorney fees to WIGA. SeaFirst has 10 days to present this court with an affidavit detailing the expenses underlying its request. RAP 18.1(d).

We affirm WIGA's reimbursement of unearned premiums to SeaFirst and ALC for covered vehicles with lease terminations beyond the 30-day claim period covered by WIGA, and prejudgment interest on the unearned premiums from the date of Integrity's insolvency, exclusive of the period between March 18, 1993, and November 20, 1997. We reverse the proration of unearned premiums and remand for recalculation of trial attorney fees to SeaFirst. We award attorney fees on appeal to SeaFirst in an amount to be determined by a commissioner of this court.

BRIDGEWATER, C.J., and ARMSTRONG, J., concur.

Reconsideration denied June 4, 1999.