# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KENCO CONSTRUCTION, INC., a Washington Corporation, | ) ) ) | No. 74069-5-I |
| Respondents, | ) ) ) | DIVISION ONE |
| | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| PORTER BROTHERS CONSTRUCTION, INC., a Washington Corporation; | ) ) ) | |
| Appellant. | ) ) | FILED: June 11, 2018 |
| | ) ) | |
| BEMO USA CORPORATION, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| KENCO CONSTRUCTION, INC., a Washington Corporation; RLI INSURANCE COMPANY (Bond No. SSB397726), | ) ) ) ) ) ) | |
| Respondents, | ) ) | |
| PORTER BROTHERS CONSTRUCTION, INC., a Washington Corporation; HARTFORD FIRE INSURANCE COMPANY (Bond No. 52BCSD1578), a foreign corporation; | ) ) ) ) ) ) ) | |
| Appellants, | ) ) | |
| HIGHLINE PUBLIC SCHOOL DISTRICT NO. 401, a public school district; | ) ) ) | |
| Defendant. | ) ) ) | |

KENCO CONSTRUCTION, INC., a
Washington Corporation,

    Respondent,

  v.

HARTFORD FIRE INSURANCE
COMPANY (Bond No. 52BCSD1578), a
foreign corporation;

    Appellant,

HIGHLINE PUBLIC SCHOOL DISTRICT
NO. 401, a public school district;

    Defendant.

---

TOTEM ELECTRIC OF TACOMA, INC., a
Washington Corporation,

    Respondent,

  v.

PORTER BROTHERS CONSTRUCTION,
INC., a Washington Corporation;
HARTFORD FIRE INSURANCE
COMPANY (Bond No. 52BCSD1578), a
foreign corporation;

    Appellants,

HIGHLINE PUBLIC SCHOOL DISTRICT
'NO. 401, a public school district;

    Defendant.

  APPELWICK, C.J. — General contractor, Porter, appeals from jury verdicts in favor of subcontractors, Kenco and Totem, and from summary judgment

dismissing its claims against surety, RLI. We reverse the award of expert fees to Kenco and Totem. We affirm in all other respects.

## FACTS

The Highline School District No. 401 (District) entered into a contract (the "prime contract") with Porter Brothers Construction Inc., to serve as the general contractor to construct Raisbeck Aviation High School.

Porter entered into a subcontract agreement with Kenco Construction Inc., to perform roofing and paneling for $1,509,745.00. It entered into a second subcontract with Kenco to perform window, door, and curtain installation for $979,897.00. As part of these contracts, Kenco selected BEMO USA Corporation as its supplier for the roofing system and related products for waterproofing. Kenco also obtained surety bonds for each of these subcontracts from RLI Insurance Company. The two surety bonds incorporated the subcontracts (which themselves incorporated the prime contract).

Porter also entered into a subcontract with Totem Electric of Tacoma Inc., to perform electrical work for $2,862,980.00.

The project encountered numerous problems affecting both Kenco's and Totem's work. At the start of the project, Totem discovered an undisclosed underground power line. It needed to be rerouted to allow pilings to be inserted. This required coordination with Seattle City Light. On October 6, 2011, the architect provided supplemental instructions to address the issue. Rerouting of the line was complete by December 23, 2011. This set the project back more than 60 days.

3

In an effort to accelerate the project, the steel erector's work was expedited, and made up 31 days of time. But, after the expedited steel erection, the structural steel was outside of the project's specifications. Kenco was asked to complete extra work to rectify the steel issue. Kenco was required to adapt to the out-of-tolerance substrates.

However, one of the problems associated with the project was the suitability of a building product used by Kenco. That product, a roofing underlayment supplied by BEMO, did not work as intended. It did not properly adhere to the structure, and therefore caused leaks. The underlayment had to be installed three successive times to seal the building.

As Kenco was completing its work, it submitted applications to Porter for progress payments. Kenco's President testified that Porter began withholding progress payment funds owed to Kenco, starting on August 12, 2012.[1] Problems also arose affecting Totem. Predecessor work was not ready, the job site was not properly prepared, and Totem was frequently forced to start and stop its work. Totem also did not receive scheduling updates that should have been provided. Totem sent numerous letters to Porter expressing concern over predecessor work, the project schedule, and impacts on cost. As a result, Totem sent a number of change order requests (CORs) to Porter.

---

[1] Under the billing arrangement, Kenco was to submit an application for progress payments to Porter, who would make application for payment for the calendar month from the project owner, Highline. Highline was then obligated to pay Porter within 30 days, and Porter was obligated to disburse those funds to Kenco within 10 days. Given this arrangement, any funds that Porter withheld on August 12, 2012, would necessarily have been for work performed in July or earlier.

4

As with Kenco, Porter made only limited progress payments to Totem. Both subcontractors demanded arbitration as provided in the contract, but Porter refused.

Kenco filed suit against Porter for breach of contract and to compel arbitration, as provided for in the contract.[2] Porter counterclaimed for breach of contract, brought claims against RLI on the bond, and later amended its answer to include bad faith claims against RLI. Totem filed a separate complaint for breach of contract and quantum meruit, among other claims. The lawsuits were consolidated.

A significant number of motions were heard prior to trial. Porter again opposed arbitration, and the trial court found that arbitration was not proper due to the presence of nonparties to the contract.[3] .

The trial was bifurcated, with the contract dispute between Porter, Kenco, and Totem, tried first. Porter's bad faith and Insurance Fair Conduct Act (IFCA), RCW 48.30.010-.015, claims against RLI were to be tried separately.

Kenco and Totem's theory of the case was that they were not properly compensated for work that they dutifully performed in response to problems with the project that were attributable to Porter. Porter's theory was that it properly withheld progress payments, that the subcontractors failed to give proper notice of their claims for extra compensation as required by the subcontracts, and that

---

[2] Porter's surety, Hartford Fire Insurance Company, was named in the suit as well. But, for the purposes of our analysis, the distinction between Porter and Hartford is immaterial. We refer to them collectively as "Porter."

[3] Highline was also a named defendant, but not a party to the subcontract that required arbitration. The issues on appeal do not pertain to Highline.

Kenco caused delays. The trial court denied Porter's midtrial and posttrial motions for judgment as a matter of law based on inadequate notice as to both Kenco and Totem.

The jury found in favor of Kenco and Totem. It awarded $1,815,914.49 to Kenco, and $1,124,095.06 to Totem. And, because the jury found Porter liable, it dismissed Porter's claims against RLI on summary judgment. Therefore, no trial on the bad faith and IFCA claims was held. The trial court awarded fees including expert witness fees to Kenco, Totem, and RLI.

Porter appeals.

## DISCUSSION

Porter seeks reversal of the entire judgment, because the trial court erred by instructing the jury that the subcontractors need only to substantially comply with the subcontracts' notice of claim provisions. Porter contends that the proper standard is strict compliance with the notice requirements. And, it argues that this instructional error "infects every aspect of the judgment." (Capitalization omitted.)

As a result, it argues that we should reverse the jury's award in its entirety. First, the jury awarded Kenco $1,487,205.67 in payments that Porter withheld. Porter contends that this withholding was justified, because Kenco was not timely performing the work and delay damages were triggered. Second, the jury also awarded $328,708.82 in extra work that Kenco performed. Porter alleges Kenco did not give proper notice of this extra work as required by the contract. Finally, Porter argues that the verdict in favor of Totem must also be reversed under the same affirmative defense: lack of notice.

6

In response, Kenco argues that Porter's conduct excused strict compliance with the notice requirements. And, Totem claims that it gave proper notice, but even if it did not, Porter's own conduct made full notice, as required by the contract, impossible. .

Porter presents numerous other arguments: that the trial court erred by entering inconsistent orders, by allowing the subcontractors to recover certain types of damages, by excluding certain forms of evidence, by imposing prejudgment interest, and by preventing Porter from recovering for concurrent delay caused by Kenco.

Porter also argues that the trial court erred in dismissing its bad faith and IFCA claims against Kenco's surety, RLI.

Porter, the subcontractors, and RLI all seek attorney fees. Porter also specifically argues that the trial court erred in awarding expert fees to the subcontractors.

I.  Porter's Breach for Withheld Payments

We first address the jury's award of $1,487,205.67 of withheld payments to Kenco. Porter concedes that it stopped paying Kenco, because it believed Kenco's work was not satisfactory.[4] Kenco argued below that this constituted a material breach of the contract. Under the subcontract, Porter was required to disburse to Kenco payments that it received from Highline, within 10 days of receiving that

---

[4] The jury awarded $168,277.00 to Totem for the unpaid contract balance. Porter does not make any argument challenging this specific award.

money from Highline. Kenco argues that Porter failed to do so, and thus was in material breach of the contract for withholding those payments.

The jury heard testimony from Kenco's president that Porter began withholding payments on August 12, 2012, only four days after CCD (construction change directive) 053 was issued. Any billed payment due on August 12 would logically have been for work performed in previous months. For these withheld payments, Kenco asked the jury for $1,487,205.67. The jury awarded Kenco that full amount.[5] Thus, the jury fully adopted Kenco's arguments that a breach of contract occurred and that the withheld payments began on August 12, 2012.

Porter contends that even if the jury did find that it was in breach of contract, the trial court erred by instructing the jury that Porter could not recover for concurrent delay caused by Kenco. But, question 13 of the verdict form asked the jury to determine whether "Kenco breached its subcontracts by causing delays to the project." The jury found in favor of Kenco on this question. This means that the jury found Kenco did not breach by causing delays. Because the jury found that Kenco did not breach, it necessarily would not have apportioned any responsibility for the delay or any damages to Kenco. A jury instruction error is reversible error only if it prejudices a party. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012). Thus, regardless of whether the instruction should have been given, the jury instruction could not have prejudiced Porter, and is not grounds for reversal.

---

[5] Porter's brief acknowledges that Kenco was seeking the amount that the jury ultimately awarded for withheld payments.

We reject Porter's argument on concurrent delay and we affirm the jury's verdict regarding the $1,487,205.67 withheld payments.

## II.   Notice of Claims Based on Extra Work

The jury awarded Kenco $328,708.82 for unpaid work pursuant to CCD 053 and change orders.   It also awarded Totem $884,357.00 in labor inefficiency damages, in addition to damages for the unpaid contract balance, and damages for the unpaid change orders.   Porter does not argue that the subcontractors failed to perform the work or that the extra work was deficient.   Instead, it simply argues that these awards must be reversed because the failure to provide notice as required under the contract is a failure to satisfy a condition precedent to recovery.

The subcontracts required Kenco and Totem to give Porter notice of its intent to make a claim for extra compensation within 2 days of an occurrence that gives rise to the claim, and a certified, detailed statement of its claim within 30 days after that written notice.   The subcontracts clearly refer to these as a condition precedent to the right to prosecute any claim.   Porter pleaded, as an affirmative defense, that Kenco and Totem never gave such notice and never submitted a proper claim and their recovery for the extra work is therefore barred.   On appeal, it argues that the lack of notice entitled it to summary judgment and judgment as a matter of law on these claims.   And, it argues that the trial court erred in instructing the jury that the subcontractors need only substantially comply with the notice requirements, because Washington law requires strict compliance with contractual notice and claim requirements.

## A. Summary Judgment against Kenco was properly modified

Porter argues that the trial court entered an order at trial that conflicted with an earlier summary judgment order dismissing Kenco's claims against it for lack of notice.[6] Before trial, on July 10, 2015, the trial court granted summary judgment to Highline on Porter's cross claims against Highline that arose out of a CCD.[7] Highline's motion was grounded in Porter's failure to comply with the required notice provisions in the prime contract. Specifically, Highline argued that Kenco, Porter's subcontractor, gave insufficient notice to Highline for the extra work that Kenco performed, and thus Porter necessarily gave insufficient notice to Highline.

Porter had also moved for summary judgment against Kenco. August 7, 2015, the trial court granted this motion: "To the extent that Porter Brothers Construction, Inc.'s claims against Highline School District No. 401 are barred, any related claims made by Kenco Construction, Inc. against Porter Brothers Construction, Inc. and Hartford Fire Insurance Company are hereby dismissed with prejudice." (Emphasis added.) But, at trial, the court allowed Kenco to argue claims against Porter (not Highline) arising out of CCD 053. Porter argues that allowing Kenco to make those arguments was inconsistent with the summary judgment order.

---

[6] This summary judgment motion did not pertain to Totem.

[7] The directive was CCD 053. While a number of directives were generated throughout the course of this complex project, this is the key CCD at issue on appeal, because the disputed changes in the scope of work arose out of this directive.

10

The trial court has the authority to interpret and enforce its own orders. <u>Bero v. Name Intelligence, Inc.</u>, 195 Wn. App. 170, 179, 381 P.3d 71 (2016), <u>review denied sub nom. Westerdal v. Name Intelligence, Inc.</u>, 187 Wn.2d 1002, 386 P.3d 1085 (2017). And, " 'an order which adjudicates fewer than all claims or the rights and liabilities of fewer than all parties is subject to revision at any time before entry of final judgment as to all claims and the rights and liabilities of all parties.' " <u>Moratti v. Farmers Ins. Co. of Wash.</u>, 162 Wn. App. 495, 501-02, 254 P.3d 939 (2011) (quoting <u>Washburn v Beatt Equip. Co.</u>, 120 Wn.2d 246, 300, 823 P.2d 860 (1992)).

At trial, Kenco's opening statement and questioning of witnesses related to how much Kenco claimed for performing extra work arising out of CCD 053. Porter objected on the basis of the earlier summary judgment ruling. Porter argued the evidence presented was related to Highline, because the evidence of liability arose from CCD 053, which Highline issued. Kenco explained its theory that this was not related to notice to Highline, but to defects in predecessor work that caused the building to not be ready for Kenco's work. Kenco stressed that it sought recovery in quantum meruit, as well as breach of contract. Regarding its earlier ruling, the trial court stated, "[W]hen I ruled, I had in mind that it was basically a done deal, that because of how I had ruled with regard to the school district, I would rule similarly with regard to Porter Brothers." The trial court also noted that "I did not have in my mind the other potential claims." It then effectively modified its earlier ruling and allowed the evidence.

This modification was warranted. Questions of fact remained regarding recovery in quantum meruit and regarding whether Kenco could survive the notice requirements challenge, either because compliance was excused or because it did in fact comply. Porter fails to establish that the trial court's ruling on August 7, 2015, allowing Kenco to pursue its claims for extra work compensation against Porter, was error.

## B. Denial of Judgment as a Matter of Law against Kenco and Totem

Porter moved for judgment as a matter of law at the close of the subcontractors' case and again after the jury verdict. It argues that the trial court erred in denying these motions because the subcontractors provided insufficient notice under the contract, which was a precondition to recovery. CR 50(a)(1) authorizes a court to grant judgment as a matter of law if there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party. Sing v. John L. Scott, Inc., 134 Wn.2d 24, 29, 948 P.2d 816 (1997). In considering a motion for judgment as a matter of law, a court must treat the nonmoving party's evidence as true and draw all reasonable inferences from that evidence in favor of the nonmoving party. Hill v. BCTI Income Fund I, 144 Wn.2d 172, 187-88, 23 P.3d 440 (2001), abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1, 189 Wn.2d 516, 404 P.2d 464 (2017). Review is de novo. Id. at 187.

"The general rule with respect to compliance with the terms of a bilateral contract is not strict compliance, but substantial compliance." DC Farms, LLC v. Conagra Foods Lamb Weston, Inc., 179 Wn. App. 205, 220, 317 P.3d 543 (2014). However, Porter argues that the contractual notice of claim clause at issue here is

a condition precedent to a claim and requires strict compliance under <u>Mike M. Johnson, Inc. v. Spokane County</u>, 150 Wn.2d 375, 386, 78 P.3d 161 (2003). In that construction dispute, Johnson informed the county that it would be performing extra work beyond Johnson's contract and expected to be paid for that work, but gave little further detail. <u>See</u> <u>id.</u> at 378, 381, 383, 384. Johnson's president "admitted he knew of the protest and claim provisions but could not say whether he actually complied." <u>Id.</u> at 384. The Supreme Court addressed whether "actual notice" of a contractual claim for extra work acts as an exception to compliance with mandatory notice of claim provisions under a contract. <u>Id.</u> at 386. It held that it did not. <u>Id.</u> at 391.

In <u>Weber Construction, Inc. v. Spokane County</u>, 124 Wn. App. 29, 32, 34-35, 98 P.3d 60 (2004), on summary judgment the court addressed excuse from compliance with a contractual notice requirement that functioned as a condition precedent. Weber sued for additional compensation for extra work, but the county argued that it was not liable for that compensation because Weber did not adhere to the notice requirements in the contract. <u>Id.</u> at 31. First, the Court of Appeals held that Weber's failure to adhere to the notice requirements was excused, because that failure was caused, at least in part, by the county's failure to cooperate.[8] <u>Id.</u> at 35. Second, it held that the county waived compliance with the

---

[8] <u>Johnson</u> also discussed the requirements of waiver:

Washington law generally requires contractors to follow contractual notice provisions unless those procedures are waived. A party to a contract may waive a contract provision, which is meant for its benefit, and may imply waiver through its conduct. Waiver by

notice requirement through this conduct.  Id.; see also Bignold v. King County, 65 Wn.2d 817, 825-26, 399 P.2d 611 (1965) (upholding quantum meruit award in favor of contractor, even when strictly proper notice was not given, when conduct of the county required contractor to perform extra work).  The subcontractors rely on these two principles from Weber for why judgment as a matter of law was not appropriate.

### 1.  Strict Compliance Regarding Notice

Porter argues that Kenco and Totem failed to give timely, adequate, certified notice of its claims, which was a condition precedent to Kenco's and Totem's right to seek an extension of time and costs, and therefore it was entitled to judgment as a matter of law.  In response, Kenco and Totem argue that, viewing the facts of notice in the light most favorable to the subcontractors, a jury could reasonably rule in their favor.  Porter relies on Johnson in arguing that compliance with notice provisions is a condition precedent to enforce the subcontractors' rights to seek an extension, extra costs, or to bring a lawsuit under the contract.

Porter correctly describes Johnson, however, we find Johnson distinguishable on these facts.  In Johnson there was no discussion of the party claiming lack of notice being in breach of contract.  See 150 Wn.2d at 396.  A party is barred from enforcing a contract that it has materially breached.  Rosen v. Ascentry Techs., Inc., 143 Wn. App. 364, 369, 177 P.3d 765 (2008).  Here, Kenco

conduct, however, "requires unequivocal acts of conduct evidencing an intent to waive."

150 Wn.2d at 386 (internal citations omitted) (quoting Absher Constr. Co. v. Kent Sch. Dist. No. 415, 77 Wn. App. 137, 143, 890 P.2d 1071 (1995)).

asserted Porter materially breached the contract first, and evidence to support such a finding had been presented to the jury at the time the trial court denied the motion midtrial. If the jury found that Porter was first to materially breach the contract, Porter would have no authority to enforce compliance to the contract's strict notice requirements. The jury found Porter breached the contract, but not Kenco. Denial of Porter's motions for judgment as a matter of law as to Kenco on failure of the notice condition precedent was not error.

With respect to Totem, if liability under a contract depends upon a condition precedent one cannot avoid his liability by making the performance of the condition precedent impossible. Refrigeration Eng'g Co. v. McKay, 4 Wn. App. 963, 970, 486 P.2d 304 (1971). Totem gave notice to Porter that it could not stay on schedule and budget, because other contractors' work was not complete. That notice was not followed within 30 days by a revised schedule or cost estimate for Totem's additional work, which strict compliance would require. But, evidence was admitted showing that it was impossible for Totem to provide a revised schedule or to accurately estimate additional costs without a recovery plan from Porter showing when other contractors would complete their work. The evidence also showed that, as the general contractor, only Porter could control the work of other trades or provide and update a recovery schedule. But, Porter did not provide the schedule updates or recovery plan that Totem requested. From this evidence, a jury could find that Porter prevented Totem from complying strictly with the notice requirements, and therefore could conclude that Totem was excused from the condition precedent to making its claim. Denial of Porter's motions for judgment

15

as a matter of law as to Totem on the issue of compliance with the condition precedent was not error.

### 2. Jury Instructions on Notice

Appellate courts review a challenged jury instruction de novo, within the context of the jury instructions as a whole. Gregoire v. City of Oak Harbor, 170 Wn.2d 628, 635, 244 P.3d 924 (2010). Porter argues that the instructions erred by (1) placing the burden on Porter to prove that the subcontractors did not give notice, and (2) instructing that the subcontractors were only required to substantially comply with the contractual notice requirements.

### a. Jury Instruction on Burden of Proof as to Notice

First, Porter argues that the trial court erred in giving instruction 19 and 22, because those instructions imposed the burden of proof on Porter to show that the subcontractors did not comply with the notice requirements.[9] On the one hand, Washington law ordinarily requires that, when a defendant's obligation is subject to a condition precedent to be performed by the plaintiff, the plaintiff must prove that he or she satisfied, or was excused from performing, that condition. Puget

---

[9] Kenco and Totem argue that Porter failed to preserve its arguments on instructions 19 and 22 regarding the burden of proof and good faith efforts. Instructions 19 and 22 contained virtually identical language, but instruction 19 applied to Kenco and instruction 22 applied to Totem. We find that the arguments on these instructions were preserved. When the parties were discussing jury instructions, Porter stated to the trial court, "I'd rather that that language about good faith not be in there at all," and "Well, the problem with this now is that their [sic] shifting the burden of proof." This shows that Porter argued to the trial court on the issues of good faith and the allocation of the burden.

Porter also challenges instruction 24. However, the language on waiver that it argues is required was, in fact, contained in instruction 24. We address it no further.

16

Sound Serv. Corp. v. Bush, 45 Wn. App. 312, 316, 724 P.2d 1127 (1986). But, Washington law also ordinarily requires that the defendant prove any affirmative defenses that he or she alleges. See Kastanis v. Educ. Emp. Credit Union, 122 Wn.2d 483, 493, 859 P.2d 26, 865 P.2d 507 (1993). And, here Porter pleaded "failure to comply with contractual and statutory notice and claims requirements" as an affirmative defense.[10] Porter therefore assumed the burden to prove this affirmative defense. The jury instructions, like Porter's own answer to the complaint, referred to the lack of notice argument as an affirmative defense. The trial court did not err in requiring Porter to prove an affirmative defense that it alleged.

### b. Instructing on Substantial Compliance Rather than Strict Compliance

Porter argues that instructing on substantial compliance with notice, rather than strict compliance required by the condition precedent, was error. Porter argues that jury instructions 19 and 22 were therefore a misapplication of Johnson and Weber. We disagree.

As discussed above, Johnson would not control if there was a first breach by Porter. Kenco submitted sufficient evidence of Porter's prior breach of contract to warrant instructing the jury on substantial compliance. And, the Weber court found that judgment as a matter of law was not warranted, because, viewing the evidence in the light most favorable to Weber, the county did not provide enough information for Weber to be able to give strict notice of extra costs. 124 Wn. App.

---

[10] Porter did not use identical language in its separate answers to Kenco and Totem. But, it pleaded lack of contractually required notice as an affirmative defense in both.

at 35. Although Weber analyzed the issue under a substantial evidence standard, the law underlying that holding is that interfering with a party's ability to give notice excuses strict compliance. See id. at 35-36; see also Refrigeration Eng'g Co., 4 Wn. App. at 970-71. And, Totem presented sufficient evidence to warrant giving the jury instruction.

Turning to the specifics of the instructions here, instructions 19 (regarding Kenco), and 22 (regarding Totem) explicitly informed the jury that it may find in favor of Porter if three elements were met: (1) Porter performed its obligations, (2) the subcontractors failed to make good faith efforts, and (3) the subcontractors "materially breached one or more of [their] contractual obligations claimed by Porter."

Porter had the opportunity to argue that Kenco and Totem breached the contract by not strictly complying with the notice and claim requirements for extra work. Kenco and Totem had the opportunity to argue that they were excused from the contractual duty to meet the condition precedent and only had to substantially comply with the contract's notice requirements to submit their claims. Jury instructions are sufficient if they allow each party to argue its case, are not misleading, and properly inform the jury of the applicable law when read as a whole. Rekhter v. Dep't of Soc. & Health Servs, 180 Wn.2d 102, 117, 323 P.3d 1036 (2014). The jury instructions and verdict form adequately allowed the parties to argue their case.

### c. Sufficient Evidence to Find Substantial Compliance

Both Kenco and Totem provided sufficient evidence that they substantially complied with the notice provisions of the contract to warrant instruction to the jury.

First, with respect to Kenco, Porter notified Kenco via e-mail that additional work orders were forthcoming. On August 1, 2012, Kenco submitted to the architect and Porter request for information (RFI) 307, which requested further guidance on whether and how to proceed with modification to the substrates. On August 8, 2012, the same day that Highline issued CCD 053, a Porter employee e-mailed a Kenco employee that "CCD 053 forthcoming for additional work." The Kenco employee responded, "How do you want me to provide notification that we will plan on providing the additional work required on a T[ime] & M[aterials] basis? This is really going to be a moving target with ongoing impacts." Porter acknowledged this, and instructed Kenco as follows:

> This is how we will be proceeding with CCD 053 "roof shimming" on a time and materials basis. . . . Please keep daily timesheets with hours/material/equipment used to do this corrective work. This complete, corresponding CCD work can be billed monthly with billing statement according to the % of the CCD work complete through the end of the month. Please keep daily records of the CCD work. . . .

Can you give me a NTE [(not to exceed?

Kenco responded that its not-to-exceed amount was $1,500,000.00. Days later, Porter informed the project architects that the forecasted cost of the extra work would be $1,500,000.00, ostensibly adopting the amount given by Kenco.

Porter did not object that the extra work would be billed on a time and materials basis, and that the costs would not exceed $1,500,000.00. The purpose

of the contract's notice provisions were met: to identify any potential disputes over changes that might arise and resolve them before the work was performed. A jury could conclude that the correspondence was substantial compliance with the notice requirements for the extra work.

In April 2013, when Kenco submitted a billing statement to Porter for its extra work, it was rejected, not because Kenco failed to comply with the notice requirements. Instead, the architect objected to the bill's inclusion of costs related to the remediation of the defective membrane, among other items. Kenco resubmitted the bill. At this point, the issue was not whether the claim was barred due to failure to comply with notice and claim requirements in advance of performing the work, but whether the billing for the extra work was correct. The subcontract directed such disputes to be resolved in arbitration, which Kenco sought. But, Porter resisted, because of the presence other parties and issues. The jury ultimately resolved the question.

With respect to Totem, on September 24, 2012, Totem employee Jason Riley asked Porter for an updated schedule. Porter responded that it would provide one by the end of the week. 8 Porter subsequently told Riley that it was deliberately not providing Totem with an updated schedule. Then, on October 3, 2012, Totem received a letter, including and updated project schedule, from Porter stating that Porter intended to provide monthly schedule updates. But, Riley testified that Totem questioned the accuracy of the dates on that schedule and did notreceive additional schedule updates.

On October 8, 2012, Totem sent a letter to Porter. That letter stated (1) that a substantial portion of other contractors' work scheduled to be completed by that point was not in fact complete, (2) that these delays were affecting Totem's schedule and costs, (3) that the subcontract requires Totem to give Porter notice, and (4) that "the purpose of this letter is to ensure that you have timely notice of these issues and the fact that Totem could be impacted."

Totem sent a second notice letter to Totem on November 1, 2012, listing the specific incomplete work items that were affecting Totem's ability to perform its work. The November 1 letter also stated that it was intended to provide Porter notice of Totem's costs and delays.

Totem sent another notice letter to Porter on November 28, 2012. That letter informed Porter again of the increased costs and timeline, and expressed Totem's concern that it had not received a recovery plan or project schedule updates that Porter had promised. And, as a result, Totem was limited in its ability to estimate its own revised schedule and costs. The letter closed by stating, "Please understand that even though Totem may experience impact costs and delays, it is Totems [sic] intention to continue to work with and cooperate with Porter Brothers in the effort to complete this project successfully." Absent a recovery plan or updated schedule, Totem was limited in its ability to provide further details. Totem followed up with a similar letter, with even more detail about the ongoing problems, on December 11, 2012.

Kenco and Totem presented sufficient evidence for a jury to conclude that they substantially complied with the contractual notice and claim provisions. The

jury instructions properly allowed the parties to argue their theory of the case. The jury instructions properly allocated the burden of proof as to the affirmative defenses alleged.

III.  Scope of Damages

Porter assigns error to the damages awarded in two ways. First, it argues that the trial court erred in allowing Kenco to recover compensation for losses due to the delay,[11] even though Kenco did not present evidence required by the contract as to how the project's critical path was affected. Second, it argues that the trial court erred in allowing Totem to recover damages using the total cost method.

A. "Delay" Damages for Kenco

Porter argued pretrial in a motion in limine that Kenco was bound by the contract provision that required the contractor to explain to the owner how a delay affected its critical path before collecting damages for that delay. The trial court denied this motion. Porter claims this was error.

The prime contract stated that time extensions and damages were limited to those that change the project's critical path. Kenco's subcontracts incorporated the prime contract. The subcontract allowed Kenco to collect damages due to delay "only upon the same terms and conditions and only to the extent actually allowed to Contractor by Owner." Thus, Porter argues that Kenco was required to show how the alleged breach affected the critical path, which it claims it did not do,

---

[11] Porter refers to these delay damages as "impact damages."

before collecting such damages. Section 13 of the subcontract provides liquidated damages for "delay or interference." Kenco did not produce a critical path analysis.

Porter's argument fails for two reasons. First, for the same reasons that Porter's first breach prevented it from enforcing the strict notice and claim provisions, it also prevents enforcement of a delay damages limitation.[12] Second, even if the trial court should have excluded delay damages, Porter fails to establish that Kenco's claimed damages were "delay" damages as contemplated by the contract. Kenco's April 2013 billing sent to Porter included a single line item of $386,488.99 for "[s]chedule delays and other impacted costs."[13] But, notwithstanding the caption on the billing letter, Kenco did not seek liquidated delay damages under section 13. It sought actual damages necessitated by project changes, not merely pay for additional days to completion. Thus, the failure to present critical path evidence was of no consequence. And, the jury verdict form did not contain a specific option to award delay damages.

The trial court did not err in allowing Kenco to present the damages evidence.

---

[12] Porter cites to a federal case from the Federal Court of Claims, where a party was precluded from recovering when it did not present a critical path analysis. Mega Const. Co, Inc. v. United States, 29 Fed. Cl. 396, 435 (1993). But, the trial court cited to federal case law in imposing the critical path requirement. Id. at 424-25. It did not address the critical path requirement as a strictly contractual mandate. See id. Moreover, it did not address the extent that a complaining party's own breach affects the necessity of a critical path analysis. See id. And, Porter cites no Washington authority that presents grounds for reversal.

[13] Furthermore, it is unclear whether the jury even awarded for this amount of claimed damages. The "schedule delays and other impacted costs" amounted to $386,488.99. In its April 11, 2013 demand to Porter, Kenco demanded $636,281.99 for extra work. In closing argument, Kenco asked for $1,042,784.25 for extra work. But, the jury awarded only $328,708.92 for extra work.

B. Total Cost Damages for Totem

Porter contends that the trial court erroneously denied its motion for judgment as a matter of law to foreclose Totem from using the total cost method to calculate its damages.

The total cost method of proving damages consists of subtracting the bid on the project, or the estimated cost of completion, from the actual total cost. Seattle W. Indus., Inc. v. David A. Mowat Co., 110 Wn.2d 1, 6, 750 P.2d 245 (1988). This approach has been termed a "last resort" method of determining damages, and is sometimes permitted only where no better method of proof of damages is available. Id. "Once the fact of damage has been established by a preponderance, the plaintiff is obligated to produce only the best evidence available which will afford the jury a reasonable basis for estimating the dollar amount of his loss." Id. "So long as the jury is not left to speculate or conjecture, it has wide latitude in calculating damages."[14] Id.

The trial court instructed the jury that it may award total cost damages, as Totem urged, if the four elements were met:[15]

[14] Porter presents foreign authority where courts have urged extreme caution in using the total cost method. See, e.g., John F. Harkins Co., Inc. v. School Dist. of Philadelphia, 313 Pa. Super 425, 433, 460 A.2d 260 (1983) (observing that the total cost method "should be used only when the circumstances are exceptional"). But, the first element in the instructions given here required that there be no other reasonable method by which to track Totem's losses. This, in and of itself, allows such damages in only exceptional circumstances.

[15] Porter does not argue that the jury instruction on total cost damages misstated the law. Rather, it argues that the court should have granted its CR 50 motion for judgment as a matter of law to dismiss the total cost calculation method, because the facts did not satisfy the applicable elements.

(1) There was no other reasonable method by which to track Totem's direct actual losses on the Project;

(2) Totem's bid was reasonable;

(3) Totem's actual costs were reasonable; and

(4) Totem has subtracted from its claim costs that were unreasonable or caused by its own errors.

The jury ultimately awarded Totem $884,357 in damages.[16]

Porter argues that denying its motion for judgment as a matter of law on the total cost method was improper, because (1) Totem's damages were subject to contractual limitation of liability, and (2) Totem could not meet the first and fourth total cost elements. In considering a motion for judgment as a matter of law, a court must treat the nonmoving party's evidence as true and draw all reasonable inferences from that evidence. Hill, 144 Wn.2d at 187-88. Review is de novo. Id. at 187.

### 1. Applicability of Contractual Damage Limitations

Porter claims that the total cost method was not warranted, because it is not part of the damages provided for in the contract. First, it points to section 13 of the subcontract. That section provides liquidated damages for "delay or interference." But, as Totem points out, Porter's own expert, Jerry Hainline, explicitly distinguished Totem's inefficiency claims from delay claims:

Q. This Totem claim, what type of a claim is it? Is it an inefficiency claim, or is it a delay claim?

A. It's an inefficiency claim.

---

[16] The verdict form did not explicitly identify which damages calculation method that the jury used.

25

Hainline's testimony distinguished delay claims, which section 13 applies to, from inefficiency claims. Section 13 of the subcontract did not make any mention of inefficiency claims, and thus did not bar them. And, this reading is supported by section 13's consistent referral to increments of time and extensions, which would typically be associated with a delay claim, rather than the costs associated with an inefficiency claim.

Second, Porter argues that section 8.3.3.3 of the prime contract also bars total cost damages. That section states that "[t]he contractor shall not in any event be entitled to damages arising out of actual or alleged loss of efficiency; . . . impact damages including cumulative impacts; or similar damages." (Bold face omitted.) Porter stresses that § 5.3.1 of the prime contract generally imposes the same rights and obligations from subcontractor to contractor, as it does from contractor to owner.[17] This provision in the prime contract may well prevent a subcontractor from collecting loss of efficiency damages against an owner, but it does not bar

---

[17] Section 5.3.1 states,

By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations an responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner.

collecting such damages from the general contractor. And, the subcontract contains no provision similar to section 8.3.3 that would apply between the subcontractor and the general contractor.

The trial court correctly concluded these provisions do not bar Totem's recovery for inefficiency damages. The trial court did not err in allowing Totem to collect its total cost damages.

### 2. Evidence to Survive Judgment as a Matter of Law

Having determined that total cost damages were not outright barred by the contract, we must determine whether the challenged first and fourth total cost elements were satisfied. Here, they were.

As to the first element, expert testimony addressed the impracticability of alternative damage calculation methods. Totem expert Bruce Black testified that Totem's impact and inefficiency claim presented a unique challenge in quantifying costs:

> It's difficult to quantify, because for impacts, you're still doing, base contract work or work which has been quantified under other units, but you can't do it the way you're supposed to. And it's very hard to get a handle on how much -- how to exactly quantify the dollars.

When asked whether Totem was able to independently track impacts with specificity, he testified that "[o]n a job like this, it's just impossible. . . . [W]hen you are faced with a situation like this, your trades mensimply [sic] are not geared to separate an impact hour from a basic hour." On appeal, Porter argues that Kenco should have used a "measured mile" damage analysis. But, Black testified that a measured mile analysis "was completely impracticable" for this project. Viewed in

27

the light most favorable to Totem, the jury could conclude that the first total cost element was satisfied.

Second, the jury heard evidence that Totem subtracted any unreasonable costs, or those caused by its own error. Totem excluded pay for man hours after a certain date to make its claim "conservative," and to omit bills for hours on what Black described as a "variety of straggling issues." It deducted 176 hours of what its expert described as "non-productive hours." Viewed in the light most favorable to Totem, the jury could conclude that Totem subtracted unreasonable costs caused by its own errors.

The evidence was sufficient to survive judgment as a matter of law with respect to the first and fourth elements of its claim for total cost damages.

IV.    Evidentiary Issues

Porter makes two evidentiary arguments. First, it argues that the trial court erred in excluding a letter from Kenco to BEMO as a settlement communication. Second, it argues that the trial court erred in excluding evidence that Porter sought to make progress payments to Kenco, but that RLI refused to waive potential defenses in return.

A. Kenco's Liability for Defective Product

Kenco argues that the trial court abused its discretion by excluding what the trial court viewed as a settlement offer under ER 408. The evidence in question was a letter from Kenco to BEMO, the supplier of roof membrane product to Kenco. The letter informed BEMO that Kenco found the membrane product to be defective, and that it believed it had viable product liability claims against BEMO.

28

The trial court excluded the letter, and testimony regarding the letter, because, in its view, "the context of the discussions were entirely geared towards settlement and, therefore, should be considered conduct or statements made in compromise negotiations as ER 408 mentions."[18] Kenco argues that this was error, because the letter contained no offer of compromise.

Under ER 408, offering or promising to compromise, or attempting to compromise a claim, is not admissible to prove liability for or invalidity of the claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.[19] Id. This court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. Salas v. Hi-Tech Erectors, 168 Wn.2d 664,

---

[18] The trial court granted Kenco's motion in limine seeking to exclude references to the content of any settlement negotiations. The order in limine did not specifically reference the BEMO letter, or any other specific settlement evidence. The trial court excluded the BEMO letter specifically as settlement evidence once it was referenced at trial, and at the time reasoned that it fell within its order in limine on settlement evidence.

[19] Porter argues that ER 408 applies only to settlement evidence offered by an offeree. Here, BEMO was the offeree, and thus Porter argues that ER 408 does not apply. But, it did make this assertion below. Moreover, the argument over reads Washington case law. Porter cites 5A Karl B. Tegland, Washington Practice: Evidence Law and Practice § 408.5, at 62 (6th ed. 2016). Tegland observes that our Supreme Court has held that ER 408 does not bar the offeror from offering settlement evidence. Id. This was the principle our Supreme Court set forth in Bulaich v. AT&T Info. Sys., 113 Wn.2d 254, 265, 778 P.2d 1031 (1989). Tegland states that this means that ER 408 bars settlement evidence introduced only by an offeree. § 408.5, at 62.

This is an overstatement of Bulaich's holding, and Tegland acknowledges that "it is possible that a Washington court might reach a different result on different facts." Id. In Bulaich, the court said that the rule does not bar offerors from introducing such evidence, but it said nothing about the rule being limited to only offerees. 113 Wn.2d at 265. Rather, the policy reasons that bar offerees from introducing settlement evidence, would also apply to the third party here, Porter, from offering such evidence. Kenco may assert ER 408, even though Porter is a third party, rather than the offeree.

668, 230 P.3d 583 (2010). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. Kreidler v. Cascade Nat'l Ins. Co., 179 Wn. App. 851, 866, 321 P.3d 281 (2014).

Porter cites favorably to Fetty v. Wenger, 110 Wn. App. 598, 36 P.3d 1123 (2001). In Fetty, Wenger hired Fetty to represent a potential heir's interests in an estate planning matter. Id. at 599. Wenger became dissatisfied with Fetty. Id. Over the course of 12 months, Wenger sent Fetty a request for an itemization of his fees. Id. Fetty failed to oblige. Id. On appeal, Wenger argued that the letters were inadmissible under ER 408, and that the trial court should have therefore excluded them. Id. at 601-02. With little analysis, and no discussion of the specific content of the letters, the Court of Appeals held that the letters were not subject to ER 408 exclusion. Id. Fetty has little applicability to Porter's argument. The case gives no details on the letters' contents. And, the court found that the trial court admitting the letters was not error, whereas here, the issue is whether the trial court excluding the letters was an abuse of discretion. Fetty does not control.

Here, the trial court's decision was within its discretion. The letter is not an explicit settlement offer. And, it provides no specific amount that Kenco would be willing to settle the product dispute for. But, the letter mentions damages: "[W]e believe this to be a product liability issue and [that we] have legal claims against your company and your product liability insurance for the damages noted above." And, it continues with: "It is unfortunate that what is otherwise a good looking roof project has lead us to this conflict and process." This language suggests intent to come to an agreement. It goes on to "request you [BEMO] engage both your

insurance carrier and corporate management in <u>resolving</u> the multiple claims and counterclaims across multiple parties."[20] (Emphasis added.)

Presiding over this complex trial with many parties, the trial court was in the best position to gauge whether, in context, this letter was part of settlement negotiation. Its ruling that the letter was barred under ER 408 was not manifestly unreasonable, and it was not an abuse of discretion.[21]

### B. Progress Payments

Porter next contends that the trial court abused its discretion in excluding evidence of RLI's refusal to consent to Porter releasing progress payments to Kenco.

RLI provided Kenco's surety bond. Porter claims that it was prepared to pay Kenco certain undisputed and limited payments. Before doing so, Porter wanted RLI's promise that it would not use any such payment as part of an "unauthorized payment" defense its obligations under the bond. <u>See, e.g.</u>, <u>City of Tacoma v. Peterson</u>, 174 Wash. 621, 625, 25 P.2d 1034 (1933) (discussing the

---

[20] Moreover, the jury heard evidence that the BEMO product did not work as intended. Even if the letter was wrongfully excluded, it would have been cumulative to other evidence, because other evidence showed the delay and expense that the BEMO product caused.

[21] Porter alternatively argues that the letter should have been admitted under an exception for settlement evidence that contains admissions of distinct fact. It cites one Court of Appeals case, <u>Eagle Ins. Co. v. Albright</u>, 3 Wn. App. 256, 264, 474 P.2d 920 (1973) for this proposition. But, nothing in the record shows that they argued this specific exception to ER 408 below.

Porter also argues that the trial court should have admitted a redacted version. But, the record does not show that Porter requested redaction of the settlement letter below, even though it requested admission of other redacted documents at trial. As such, these alternative arguments are waived under RAP 2.5(a).

"general rule" that, a surety bond obligee must deduct from payments to the principal any sum owed to the obligee, otherwise the surety will be discharged). RLI refused, and reserved all rights.

Porter cites no authority to support its argument that this exclusion was in error, or that RLI was <u>required</u> to accept Porter's offer. Nor does it reference any specific contractual provisions. Instead, it simply argues that it was deprived of a fair trial. Porter's decision to pay or not to pay may have had consequences. But, Porter was always free to pay. RLI was not required to accept Porter's offer. To the extent the decision not to make the payments exposed Porter to damages, Porter did not demonstrate that RLI forced the choice on Porter, or that RLI violated an obligation to agree to Porter's demand. The trial court's narrow ruling to exclude evidence regarding consent was not an abuse of discretion.

## V. Prejudgment Interest

Porter also argues that the trial court erred by holding Porter responsible for prejudgment interest. Prejudgment interest is granted to compensate a party for the loss of use of money to which he was entitled. <u>Jones v. Best</u>, 134 Wn.2d 232, 242, 950 P.2d 1 (1998). It "is favored in the law because it promotes justice." <u>Seattle-First Nat'l Bank v. Wash. Ins. Guar. Ass'n</u>, 94 Wn. App. 744, 760, 972 P.2d 1282 (1999). This court reviews an award of prejudgment interest for an abuse of discretion. <u>Mehlenbacher v. DeMont</u>, 103 Wn. App. 240, 250, 11 P.3d 871 (2000).

The jury verdict was entered on September 17, 2015. The parties brought a number of motions in the months following trial. The subcontractors and RLI brought motions for attorney fees and entry of judgment. On October 21, 2015,

32

Porter moved for judgment as a matter of law, or alternatively for a new trial. The trial court did not rule on these motions for months. Then, on July 12, 2016, it denied Porter's motion for judgment as a matter of law or for a new trial. It entered judgment in favor of each of the subcontractors and RLI. However, on July 20, 2016, Porter filed a motion seeking reconsideration and vacation of the judgments, because of the trial court's failure to promptly act. A new trial judge[22] denied this motion.

On appeal, Porter argues that the trial court erred by allowing the prevailing parties to collect prejudgment interest for the period prior to entry of judgment. It relies on Seattle-First, 94 Wn. App. at 761. It argues that the case stands for the proposition that there is no basis for awarding prejudgment interest when a delay is not attributable to the defendant.

But, that overstates the holding in Seattle-First. The prevailing party waited four years to move for entry of judgment. Id. at 760-61. The trial court ruled that the prevailing party had foregone its right to collect interest by not presenting its judgment during the four years. Id. at 761. The Court of Appeals described this delay as "unexplained" and "unreasonable". Id. It therefore affirmed the denial of prejudgment interest. Id. It reasoned that " 'Washington trial judges have discretion to disallow such interest during period of unreasonable delay in completing litigation that is attributable to claimants.' " Id. (emphasis added)

---

[22] The trial judge presided over the posttrial motions, except Porter's July 20, 2016, motion, which was heard by a separate judge.

(quoting Colonial Imports v. Carlton Nw., Inc., 83 Wn. App. 229, 245, 921 P.2d 575 (1996)).

Porter asserts that this rule means that prejudgment interest should not be awarded unless a delay is attributable to a defendant. But, the inverse is true. Seattle-First holds that the trial court has discretion to deny prejudgment interest if the delay is attributable to claimants. Id. Porter makes no argument that the delay was the result of the claimants' conduct here. And, the trial court was faced with numerous, complex posttrial motions. Its actions may not have been prompt, but they do not amount of an abuse of discretion. The trial court did not abuse its discretion in awarding prejudgment interest.

VI.    Claims Against RLI

Porter also appeals the trial court's dismissal of its claims against RLI for bad faith and violation of IFCA. And, Porter argues that the trial court erred in awarding RLI attorney fees below.

A. Relevant Facts

Kenco's subcontracts[23] required surety bonds. RLI provided Kenco with two surety bonds. The bonds stated that RLI's obligation was null and void on the condition that Kenco promptly and faithfully performed its duties.

Porter believed that Kenco failed to satisfy its obligations under its subcontract. On January 14, 2013, Porter tendered a bond claim to RLI demanding that RLI step in and "immediately perform Kenco's obligations under

---

[23] Technically, Kenco had two subcontracts: one for the roof and one for the windows, doors, and curtain walls. Therefore, RLI provided two separate bonds. The distinction between the two bonds is immaterial for this dispute.

its subcontracts." On April 24, 2013, RLI responded that coverage was not warranted, because Kenco had since satisfied the demand made in January.[24] On May 29, 2014, Porter tendered a second claim to RLI for defense against claims made by Totem, Highline, and BEMO. On July 2, 2014, RLI responded that this second claim was not covered, because RLI had no duty to defend a bond obligee such as Porter.[25]

Subsequently Porter added claims to include causes of action for common law bad faith and violation of IFCA. However, after the jury issued their verdict against Porter in the first trial, RLI renewed its motion for summary judgment. The trial court granted the motion. There was no second trial on Porter's claims against RLI. Porter argues that this was in error, because issues of material fact remained between Porter and RLI.

B. Standard of Review

When reviewing a trial court's order on summary judgment, this court engages in the same inquiry as the trial court. Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 394, 823 P.2d 499 (1992). The court considers the facts in the light most favorable to the nonmoving party, and summary judgment is appropriate only if reasonable persons could reach but one conclusion. Id. at 394-95. A court should grant summary judgment only when there is no genuine issue as to any

---

[24] In this coverage denial letter, RLI did not concede that Kenco had ever failed to perform in any way.
[25] In other words, RLI was duty bound to fulfill obligations of its principal, Kenco, but not to defend against lawsuits by third parties against the obligee, Porter.

material fact. Id. at 395. The court makes all reasonable inferences in favor of the nonmoving party. Id.

Resolution of this issue requires an interpretation of the surety contract. The undertakings of compensated sureties are regarded as in the nature of insurance contracts, and subject to the rules applicable to simple contract law. Colo. Structures, Inc. v. Ins. Co. of the W., 161 Wn.2d 577, 586, 167 P.3d 1125 (2007). Interpretation of an insurance contract is a question of law, reviewed de novo. Id.

## C. Insurance Bad Faith

Porter argues that RLI's two denials of coverage (in response to the first and second claims) amount to both common law bad faith and violation of IFCA.[26] Substantively, Porter argues that RLI's liability arises out of: (1) failure to conduct a reasonable investigation, (2) failure to tender a defense when there was a potential for a covered claim, and (3) bad faith interference with payment. And, it argues that this alleged wrongful conduct should result in coverage by estoppel.

Before arguing the specifics of each of these three claims, Porter relies broadly on Colorado Structures, 161 Wn.2d 577, in arguing that its status as bond obligee gives rise to a duty flowing from RLI to Porter. Colorado Structures hired a subcontractor, Action. Id. at 582. Action breached its contract. Id. at 583. Colorado Structures successfully argued that it gave adequate notice to the surety

---

[26] Porter also argues that summary judgment should necessarily be reversed on the insurance issues, if this court reverses on the contract issues. But, because we affirm the contract issues, this is not grounds for reversing the insurance issues.

to trigger payment on the bond. Id. at 594. However, there was no specific bad faith claim. Instead, the substantive dispute was over adequacy of notice. See id. Having resolved this issue, the court went on to hold that Olympic Steamship[27] fees were available to Colorado Structures as a bond obligee:

> The process for purchasing surety performance bonds is much like the process for purchasing insurance contracts. . . . We read Olympic Steamship as including performance bonds.
>
> When an event occurs that arguably triggers the surety or insurance company's duty to make payments, the parties may dispute whether payment is in fact owed. The disparity of power, at this point in the relationship, is compelling. Sureties may be tempted to withhold payment in every case, gambling that the transaction costs of litigation will dissuade even a percentage of their obligees from asserting their right to payment. If the maximum risk to the surety is the penal amount of its bond, a surety has nothing to lose. The obligee has no leverage over the surety to compel payment, except litigation. If the transaction costs of litigation are too high relative to the bond, obligees will simply cut their losses.
>
> . . . The surety, risking only the value of the bond, may be motivated to withhold payment. As our court held in Olympic Steamship, principles of equity require courts to award attorney fees to the obligee to remedy the disparity inherent to these financial relationships.

Id. at 597, 601-03.

Porter reads this holding broadly. It argues that, under Colorado Structures, sureties are treated equally as liability insurers with respect to duties, and, thus, bad faith. But, treating sureties equally for the purposes of bad faith goes well beyond the facts before the court in Colorado Structures. Colorado Structures addressed the narrow issue of Olympic Steamship fees. Porter cites no authority that would extend this reasoning to duties of good faith to third parties. And, this

---

[27] Olympic S.S. Co., Inc. v. Centennial Ins. Co., 117 Wn.2d 37, 811 P.2d 673 (1991).

makes sense. Bad faith arises out of the fiduciary relationship between the insurer and insured. Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 385, 715 P.2d 1133 (1986). Porter was not a party to the contractual relationship between RLI and Kenco, and no fiduciary duty existed between RLI and Porter. Porter therefore cannot pursue RLI for common law bad faith. Nor can Porter recover for any IFCA arguments, because "nothing in the language of IFCA gives third party claimants the right to sue." Trinity Universal Ins. Co. of Kan. v. Ohio Cas. Ins. Co., 176 Wn. App. 185, 201, 312 P.3d 976 (2013).

Because no bad faith or IFCA duty flowed from RLI to Porter, its claims against RLI necessarily fail. We need not address the specifics of the claim.

VII.    Fees and costs

Porter argues that the trial court erred in awarding attorney fees below to Kenco, Totem, and RLI, and erred in awarding expert fees to Kenco and Totem. And, Porter requests fees on appeal. In response, Kenco, Totem, and RLI also request fees on appeal.

Washington courts traditionally follow the American rule in not awarding attorney fees and costs absent a contract, statute, or recognized equitable exception. City of Seattle v. McCready, 131 Wn.2d 266, 273-74, 931 P.2d 156 (1997).

A. Expert Fees Below to Kenco and Totem

We first address the expert fees. The trial court awarded $282,821.43 in expert fees to Kenco, and $65,603.20 in expert fees to Totem. It did so based on the parties' respective subcontracts. The relevant portion of the parties'

subcontracts (which are virtually identical with respect to expert fees), section 14(e), provides that the prevailing party in arbitration is entitled to expert fees. However, the expert fees below arose out of the trial, not an arbitration, and Porter argues that the award of expert fees was therefore error. Kenco and Totem respond that Porter resisted their attempts to arbitrate, successfully, and should not now be permitted to avoid paying for their expert fees as a result.

Section 14(e) provided for a two-step process for dispute resolution. First, it directed the parties to engage in mediation. If that proved unsuccessful, the parties would enter binding arbitration. However, Porter opposed arbitration. The trial court agreed with Porter, because of the interests of others not party to the contract: (1) Highline's intent to pursue liquidated damages against Porter, (2) BEMO's lawsuit against Kenco, and (3) Kenco's suit against PBC's bonding company.[28]

This inability to arbitrate a complex contractual dispute was reasonably foreseeable to Kenco and Totem. Yet, the plain language of the contract contemplates arbitration only. The terms were clear. If Kenco and Totem wished for expert fees to be available in a nonarbitration proceeding, they could have insisted on such language. When a contract's terms are plain and unambiguous, we interpret the term's meaning and the parties' intentions according to its plain language. Cornish Coll. of the Arts v. 1000 Va. Ltd. P'ship, 158 Wn. App. 203, 231, 242 P.3d 1 (2010). The expert fees provision was limited to arbitration. The

---

[28] Porter does not argue that the presence of these extraneous matters subjected them to expert fees that would not have arisen strictly in claims between them and Kenco.

fees were not incurred in arbitration. Therefore section 14(e) did not apply. The award of expert fees was error, and we reverse the award.[29]

### B. Attorney Fees Below to Kenco and Totem

The trial court awarded attorney fees below to Kenco and Totem, based on RCW 39.08.030, and RCW 60.28.030. At oral argument, Porter conceded that these statutes entitled the prevailing party to attorney fees. Thus, the trial court properly awarded attorney fees below to Kenco and Totem.[30]

### C. Attorney Fees Below to RLI

Porter also argues that the trial court erroneously awarded $471,414.22 in attorney fees to RLI.

The trial court awarded fees based on the subcontract between Kenco and Porter. Whether a contract authorizes an award of attorney fees is a question of law that this court reviews de novo. Torgerson v. One Lincoln Tower, LLC, 166 Wn.2d 510, 517, 210 P.3d 318 (2009).

Here, Porter and Kenco's subcontracts required Kenco to obtain a surety bond. That surety bond incorporated the terms of the subcontract. The subcontract provided for an award of attorney fees to a prevailing party. RLI's fees were incurred in a lawsuit in which Porter sought performance from RLI on Kenco's

---

[29] Nor do any of the applicable attorney fee statutes authorize an award of expert fees. Although RCW 60.28.030 and RCW 39.04.250 provide for an award of "costs," in addition to attorney fees, we are not convinced that this encompasses expert fees. See, e.g., Hayes v. City of Seattle, 131 Wn.2d 706, 719, 934 P.2d 1179, 943 P.2d 265 (1997) (holding that statutory language awarding "litigation expenses" encompasses expert fees, but statutory language awarding attorney fees and "costs" does not necessarily include expert fees). The statutes here only mention costs. Thus, these statutes do not support the award of expert fees here.

[30] The amount or reasonableness of the fees awarded are not at issue.

bond. The nature of a surety bond is that the surety will stand in the shoes of a party alleged to have failed to perform.

Washington case law that holds that funds that would otherwise be awardable to a surety principal, should go to the surety itself. See First Interstate Bank of Wash., N.A. v. Nelco Enters., Inc., 64 Wn. App. 158, 162-63, 822 P.2d 1260 (1992) ("[T]he surety is entitled to indemnification from the principal" to the extent that "the surety discharges the principal's personal obligation."). This generally includes attorney fees. RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 23 cmt. a (1996) ("These incidental expenses may include reasonable attorneys' fees incurred in conjunction with performance of the secondary obligation.").[31] Here, to the extent that it was defending its actions within the terms of the surety bond, RLI was acting in the shoes of Kenco under the subcontract. Kenco was entitled to fees under its subcontract. Therefore, RLI is entitled to fees under its surety bond with Kenco, which itself incorporated the terms of the subcontract.

And, Porter's cited authority, Walton Gen. Contractors, Inc. v. Chicago Forming, Inc., 111 F.3d 1376, 1385 (8th Cir. 1997) is inapposite. In that federal case, the court held that neither the subcontractor, nor the contractor, was the

---

[31] This principle becomes more persuasive if one considers the hypothetical progression of this case on remand if the fee award was reversed. Upon remand, the trial court would strike the attorney fees awarded to RLI. RLI would then seek reimbursement of its fees from Kenco. And, Kenco would likely be liable for fees incurred in the dispute between RLI and Porter, instead of Porter, even though Kenco prevailed in all substantive respects. This would effectively grant Porter an end around its agreement with Kenco that the losing party would be liable for fees. It would defeat the purpose of the fee shifting provision that Kenco and Porter agreed to.

"prevailing party," and thus neither was entitled to fees. Id. The surety, however, requested fees. Id. The appellate court denied that request, holding that the contractor/obligee had no obligation to pay the surety's fees. Id. But, there the surety's principal was not entitled to fees. Id. Here, RLI's principal is entitled to fees, as discussed above. Thus, if RLI steps into its shoes, it is entitled to fees in the same manner.

The trial court did not err in awarding attorney fees to RLI.

### D. Attorney Fees on Appeal

Porter, Kenco, Totem, and RLI all request fees on appeal. For the same reason that the parties were entitled to fees below, they are entitled to fees on appeal. Thus, Kenco, Totem, and RLI are entitled to attorney fees on appeal, subject to compliance with the applicable RAPs.

We reverse the award of expert fees to Kenco and Totem. We affirm in all other respects.

WE CONCUR:

42